**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Bryan Swetz individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | |
| v. | **CLASS ACTION COMPLAINT** |
| The Clorox Company, | **JURY TRIAL DEMANDED** |
| Defendant. | |

Plaintiff Bryan Swetz (hereinafter "Plaintiff"), individually and on behalf of all others similarly situated, by his attorneys, alleges the following upon information and belief, except for those allegations pertaining to himself, which are based on personal knowledge:

## NATURE OF THE ACTION

1.      This action seeks to remedy the deceptive and misleading business practices of the Clorox Company (hereinafter "Defendant") with respect to the manufacturing, marketing, and sale of Defendant's Pine-Sol cleaning products (hereinafter the "Products")[1] throughout the state of New York and throughout the country.

2.      Defendant has improperly, deceptively, and misleadingly labeled and marketed its Products to reasonable consumers, like Plaintiff, by omitting and not disclosing to consumers on

---

[1] The Products include, but are not limited to, Pine-Sol Multi-Surface Cleaner Lavender Clean, 28oz, Pine-Sol Multi Surface Cleaner Lavender Clean 48oz, Pine-Sol Multi Surface Cleaner Lavender Clean 60oz, Pine-Sol Multi-Surface Cleaner Lemon Fresh 28oz, Pine-Sol Multi-Surface Cleaner Lemon Fresh 48oz, Pine-Sol Multi-Surface Cleaner Lemon Fresh 60oz, Pine-Sol Multi-Surface Cleaner Lemon Fresh 175oz, Pine-Sol Multi-Force Cleaner Lemon Fresh 100oz, Pine-Sol Multi-Surface Cleaner Lemon Fresh 2x 100oz, Pine-Sol Multi-Surface Cleaner Sparkling Wave ® 48oz, Clorox Professional Pine-Sol Lemon Fresh Cleaner 144oz, Clorox Pine-Sol Lavender Clean All Purposes Cleaner 144oz, CloroxPro Pine-Sol Lemon Fresh All Purpose Cleaner 144oz, CloroxPro Pine-Sol Orange Energy ® All Purposes Cleaner 144oz, CloroxPro Pine-Sol Sparkling Wave All Purpose Cleaner 144oz.

its packaging that consumption of the Products may increase the risk of contracting invasive infections.

3.     As described in further detail below, the Products contain *Pseudomonas aeruginosa*, which could lead to serious and life-threatening adverse health consequences.[2]  The risk of serious infection from *Pseudomonas aeruginosa* is also particularly concerning for immunocompromised individuals that are highly susceptible to life threatening diseases and even death from *Pseudomonas aeruginosa* ingestion.[3]  This is egregious, especially because people are spreading this bacteria all over their homes by using a product that is supposed to clean their home.

4.     Defendant specifically lists both the active and inactive ingredients of the Products on the labeling; however, Defendant fails to disclose that the Products contain, or are at the risk of containing, *Pseudomonas aeruginosa*.

5.     A few representative examples of Defendant's lack of disclosure on the Products are depicted below:

---

[2] *Pseudomonas aeruginosa* is a gram-negative bacterium that causes infections in the blood and lungs and is transmitted through inhalation and skin ingestion, *see*: https://www.cdc.gov/hai/organisms/pseudomonas.html; *see also* Minh Tam Tran Thi, et al., *Pseudomonas aeruginosa Biofilms*, Int. J. Mol. Sci., 2020 Nov; 21 (22): 8671, accessible at: https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7698413/.

  



6.    *Pseudomonas aeruginosa* is recognized to be an incredibly dangerous and life-threatening substance, specifically for immunocompromised individuals, and especially in the context of inhalation and skin ingestion.[4]

---

[4] *See* https://www.blf.org.uk/support-for-you/pseudomonas; *see also* https://www.webmd.com/a-to-z-guides/pseudomonas-infection.

7.      Insofar as *Pseudomonas aeruginosa* made its way into Defendant's Products on purpose, it should have been listed on the Products labeling.   Insofar as it made its way into the Products by accident, it follows that it was due to poor manufacturing processes by either Defendant and/or their agents.  Further evidencing this fact, Defendant has issued a recall for the Products.[5]

8.      Consumers like the Plaintiff trust manufacturers such as Defendant to sell products that are safe and free from harmful known substances, including *Pseudomonas aeruginosa*.

9.      Plaintiff and those similarly situated (hereinafter "Class Members") certainly expect that the cleaning products they purchase will not contain, or risk containing, any knowingly harmful substances.

10.      Unfortunately for consumers, like Plaintiff, the cleaning products they purchased contain *Pseudomonas aeruginosa*.

11.      Defendant is using a marketing and advertising campaign that omits from the ingredients lists that the Products include *Pseudomonas aeruginosa*.  This omission leads a reasonable consumer to believe they are not purchasing a product with a known bacterium when in fact they are purchasing a product contaminated with *Pseudomonas aeruginosa*.

12.      Defendant's marketing and advertising campaign includes the one place that every consumer looks when purchasing a product – the packaging and labels themselves.  As such, a reasonable consumer reviewing Defendant's labels reasonably believes that they are purchasing a product that is safe to touch and does not contain any harmful bacterium.  Indeed, consumers expect the ingredient listing on the packaging and labels to accurately disclose the ingredients

---

[5] *See* https://www.cpsc.gov/Recalls/2023/Clorox-Recalls-Pine-Sol-Scented-Multi-Surface-Cleaners-CloroxPro-Pine-Sol-All-Purpose-Cleaners-and-Clorox-ProfessionalTM-Pine-Sol-Lemon-Fresh-Cleaners-Due-to-Risk-of-Exposure-to-Bacteria-1; *see also* https://pinesolrecall.com/.

within the Products.  Thus, reasonable consumers would not think that the Products contain, or are at risk of containing, *Pseudomonas aeruginosa*.

13.     Defendant's advertising and marketing campaign is false, deceptive, and misleading because the Products do contain, or risk containing, *Pseudomonas aeruginosa*, which is dangerous to one's health, well-being, and even life.

14.     Plaintiff and Class Members relied on Defendant's misrepresentations and omissions of the safety of the Products when they purchased them.

15.     Consequently, Plaintiff and Class Members lost the entire benefit of their bargain when what they received was a cleaning product contaminated with a known bacterium that is harmful to consumers health, and lives, which is even more so true for immunocompromised individuals.

16.     That is because Defendant's Products containing, or at risk of containing, a known dangerous substance have no value.

17.     As set forth below, cleaning products that contain *Pseudomonas aeruginosa* are in no way safe to use for cleaning and are entirely worthless.

18.     Alternatively, Plaintiff and Class Members paid a price premium for the Products based upon Defendant's false and misleading representations and omission on the Products' labels. Given that Plaintiff and Class Members paid a premium for the Products, Plaintiff and Class Members suffered an injury in the amount of the premium paid.

19.     Accordingly, Defendant's conduct violated and continues to violate, *inter alia*, New York General Business Law §§349 and 350.  Defendant also breached and continues to breach its warranties regarding the Products.

20.     Plaintiff brings this action against Defendant on behalf of himself and Class Members who purchased the Products during the applicable statute of limitations period (the "Class Period").

## FACTUAL BACKGROUND

21.     Defendant manufactures, markets, advertises, and sells cleaning products to clean surfaces in the home.  Specifically, the Products are used to clean the toughest dirt and grime and deodorize with one powerful solution.[6]

22.     Pursuant to the back labeling of the Products, it is recommended that the Products be used on hard, nonporous surfaces, including floors, sinks, counters, stoves, bathtubs, shower stalls, tiles, and more.[7]  An example of these representations on the back labeling of the Products and the Pine-Sol website as depicted below:

---

[6] https://www.cloroxpro.com/products/pine-sol/scented-cleaners/#:~:text=Clean%20the%20toughest%20dirt%20and,%2C%20toilets%2C%20dumpsters%20and%20more.
[7] https://www.pinesol.com/products/lemon-fresh-cleaner/.



23.     What is concerning is that many consumers, like Plaintiff and Class Members, use disinfecting products, akin to the Products, on a regular basis in their homes, especially to protect against the coronavirus.[8]

24.     Accordingly, sales of cleaning products have steadily increased as consumers have become more vigilant and bacteria conscious regarding the cleanliness of their homes.  With that

---

[8] https://www.reuters.com/article/us-health-coronavirus-consumer-products/cleaning-product-makers-race-to-labs-to-bolster-coronavirus-claims-idUSKBN2101W1.

in mind, the cleaning products market was valued at USD 33.8 billion in 2021 and is expected to grow with a compound annual growth rate of 4.9% from 2022 to 2028.[9]

25.     Consumers have become increasingly concerned about the effects of ingredients in products that they inhale and/or touch.  Companies such as Defendant have capitalized on consumers' desire for cleaning products, and indeed, consumers are willing to pay, and have paid, a premium for these products.

26.     Consumers lack the meaningful ability to test or independently ascertain or verify whether a product contains unsafe substances, such as *Pseudomonas aeruginosa*, especially at the point of sale, and therefore must and do rely on Defendant to truthfully and honestly report what the Products contain or are at risk of containing on the Products' packaging or labels.

27.     The Products' packaging does not identify *Pseudomonas aeruginosa*.  Indeed, *Pseudomonas aeruginosa* is not listed in the ingredients section, nor is there any warning about the inclusion (or even potential inclusion) of *Pseudomonas aeruginosa* in the Products.  This leads reasonable consumers to believe the Products do not contain and are not at risk of containing dangerous chemicals like *Pseudomonas aeruginosa*.

28.     Further, consumers, such as Plaintiff, do not expect Products sold by reputable brands to have *Pseudomonas aeruginosa.*

29.     However, the Products contain, or are at risk of containing, *Pseudomonas aeruginosa*.

30.     Specifically, Pseudomonas aeruginosa is a gram-negative bacterium that can survive on inanimate surfaces for months.[10]   Moreover, Pseudomonas aeruginosa can be

---

[9] https://www.grandviewresearch.com/industry-analysis/household-cleaners-market-report#:~:text=Report%20Overview,4.9%25%20from%202022%20to%202028.

[10] Axel Kramer, *How long do nosocomial pathogens persist on inanimate surfaces? A systematic review*, BMC Infect Dis., 2006; 6:130, accessible at: https://www.ncbi.nlm.nih.gov/pmc/articles/PMC1564025/

transmitted through airborne exposure and skin-to-skin contact.[11]  Consequently, consumers, like Plaintiff and Class Members, are at risk by using Defendant's Products as the Products are used to clean surfaces, which allows Pseudomonas aeruginosa to infect individuals by either being in close proximity to the applied surface or by touching the applied surface.

31.     Moreover, twenty-first century research has confirmed that *Pseudomonas aeruginosa* inhalation and exposure can cause death to immunocompromised individuals.[12]

32.     Defendant, The Clorox Company, is one of the oldest and leading companies of cleaning products in the United States is responsible for the manufacturing of some of the most popular house cleaning products.  With that in mind, in 2020, The Clorox Company reported sales of $2.7 billion for its household, personal care and industrial and institutional cleaning products.[13]

33.     This is why *Pseudomonas aeruginosa* in Defendant's Products is particularly concerning, as also evidenced by Defendant recalling the Products.[14]

34.     Defendant is a large and sophisticated corporation that has been in the business of producing, manufacturing, selling, and distributing cleaning products for many years, including producing and manufacturing the Products.

35.     Defendant is in the unique and superior position of knowing the ingredients and raw materials used in the manufacturing of its Products and possesses unique and superior knowledge regarding the manufacturing process of the Products, the manufacturing process of the

---

[11] S. Sudharsanam, *Airborne Pseudomonas species in Healthcare Facilities in a Tropical Setting*, Curr Health Sci J., 2015 Apr-Jun; 41(2): 95-103, accessible at: https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6201198/; *see also* https://www.endosan.com/pseudomonas-aeruginosa-causes-symptoms-transmission-and-infection-prevention/.
[12] Yohei Migiyami, et al., *Pseudomonas aeruginosa Bacteremia among Immunocompetent and Immunocompromised Patients: Relation to Initial Antibiotic Therapy and Survival*, Jpn J Infect. Dis., 2016; 69(2):91-6, accessible at: https://pubmed.ncbi.nlm.nih.gov/26073727/.
[13] https://www.happi.com/heaps/view/7374/3/341492/.
[14] See https://www.cpsc.gov/Recalls/2023/Clorox-Recalls-Pine-Sol-Scented-Multi-Surface-Cleaners-CloroxPro-Pine-Sol-All-Purpose-Cleaners-and-Clorox-ProfessionalTM-Pine-Sol-Lemon-Fresh-Cleaners-Due-to-Risk-of-Exposure-to-Bacteria-1; *see also* https://pinesolrecall.com/.

ingredients and raw materials the Products contain, and the risks associated with those processes, such as the risk of *Pseudomonas aeruginosa* contamination.

36.     Accordingly, Defendant possesses superior knowledge regarding the risks involved in the production and manufacturing of its Products.  Such knowledge is not readily available to consumers like Plaintiff and Class Members.

37.     Defendant has a duty to provide consumers, like Plaintiff and Class Members, with accurate information about the contents of the Products.

38.     Therefore, Defendant's false, misleading, and deceptive omissions regarding the Products containing *Pseudomonas aeruginosa* is likely to continue to deceive and mislead reasonable consumers and the public, as they have already deceived and misled Plaintiff and the Class Members.

39.     Defendant's misrepresentation and omission was material and intentional because people are concerned with what is in the products that they inhale and touch.  Consumers such as Plaintiff and the Class Members are influenced by the marketing and advertising campaign, the Products labels, and the listed ingredients.  Defendant knows that if they had not omitted that the Products contained *Pseudomonas aeruginosa*, then Plaintiff and the Class would not have purchased the Products at all.

40.     Through its deceptive advertising and labeling, Defendant has violated, *inter alia*, NY General Business Law § 392-b by: a) putting upon an article of merchandise, bottle, wrapper, package, label, or other thing containing or covering such an article, or with which such an article is intended to be sold, or is sold, a false description or other indication of or respecting the kind of such article or any part thereof; and b) selling or offering for sale an article which, to its knowledge,

is falsely described or indicated upon any such package or vessel containing the same, or label thereupon, in any of the particulars specified.

41.     Consumers rely on marketing and information in making purchasing decisions.

42.     By omitting that the Products include *Pseudomonas aeruginosa* on the labels of the Products throughout the Class Period, Defendant knows that those omissions are material to consumers since they would not purchase cleaning materials with a harmful bacterium.

43.     Defendant's deceptive representation and omission are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

44.     Plaintiff and the Class Members reasonably relied to their detriment on Defendant's misleading representations and omissions.

45.     Defendant's false, misleading, and deceptive misrepresentation and omission are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled Plaintiff and the Class Members.

46.     In making the false, misleading, and deceptive representation and omission described herein, Defendant knows and intended that consumers would pay a premium for a product marketed as having the ability to clean without the bacterium *Pseudomonas aeruginosa* over comparable products not so marketed.

47.     As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representation and omission, Defendant injured Plaintiff and the Class Members in that they:

   a.     Paid a sum of money for Products that were not what Defendant represented;

   b.     Paid a premium price for Products that were not what Defendant

represented;

c.    Were deprived of the benefit of the bargain because the Products they purchased were different from what Defendant warranted; and

d.    Were deprived of the benefit of the bargain because the Products they purchased had less value than what Defendant represented.

48.    Had Defendant not made the false, misleading, and deceptive representation and omission, Plaintiff and the Class Members would not have been willing to pay the same amount for the Products they purchased and, consequently, Plaintiff and the Class Members would not have been willing to purchase the Products.

49.    Plaintiff and the Class Members paid for Products that do not contain *Pseudomonas aeruginosa*.  Since the Products do indeed contain *Pseudomonas aeruginosa*, a harmful bacterium, the Products Plaintiff and the Class Members received were worth less than the Products for which they paid.

50.    Plaintiff and the Class Members all paid money for the Products; however, Plaintiff and the Class Members did not obtain the full value of the advertised Products due to Defendant's misrepresentations and omissions.  Plaintiff and the Class Members purchased, purchased more of, and/or paid more for, the Products than they would have had they known the truth about the Products.  Consequently, Plaintiff and the Class Members have suffered injury in fact and lost money as a result of Defendant's wrongful conduct.

51.    Plaintiff and Class Members read and relied on Defendant's representation about the benefits of using the Products and purchased Defendant's Products based thereon.  Had Plaintiff and Class Members known the truth about the Products, i.e., that it contains a harmful bacterium (i.e. *Pseudomonas aeruginosa*), they would not have been willing to purchase it at any price, or, at minimum would have paid less for it.

## JURISDICTION AND VENUE

52.     This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. section §1332(d) in that (1) this is a class action involving more than 100 class members; (2) Plaintiff is a citizen of New York, and Defendant The Clorox Company is a citizen of California; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

53.     This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the state of New York, contracts to supply goods within the state of New York, and supplies goods within the state of New York.

54.     Venue is proper because Plaintiff and many Class Members reside in the Southern District of New York, and throughout the state of New York.  A substantial part of the events or omissions giving rise to the Classes' claims occurred in this district.

## PARTIES

### Plaintiff

55.     Plaintiff Bryan Swetz is a citizen and resident of Dutchess County, New York. During the applicable statute of limitations period, Plaintiff purchased Defendant's Pine Sol Lemon Fresh Product that was subject to the recall.  Plaintiff was forced to incur additional expenses in the amount of approximately $200 to clean and decontaminate his home upon learning of the contamination.

56.     Had Defendant not made the false, misleading, and deceptive representations and omissions regarding the contents of the Products, Plaintiff would not have been willing to purchase the Products.  Plaintiff purchased, purchased more of, and/or paid more for, the Products than he would have had he known the truth about the Products.  The Products Plaintiff received were

worthless because they contain the known harmful substance, *Pseudomonas aeruginosa*. Alternatively, Plaintiff paid a price premium based on Defendant's false, misleading, and deceptive misrepresentations and omissions.  Accordingly, Plaintiff was injured in fact and lost money as a result of Defendant's improper conduct.

**Defendant**

57.     Defendant, The Clorox Company, is a Delaware corporation with its principal place of business in Oakland, California.  The Clorox Company is one of the largest manufacturers of cleaning products in the United States and responsible for producing some of the most popular over-the-counter drug products at frequented pharmacies, including the Products.

58.     Defendant manufactures, markets, advertises, and distributes the Products throughout the United States.  Defendant created and/or authorized the false, misleading, and deceptive advertisements, packaging, and labeling of its Products.

## CLASS ALLEGATIONS

59.     Plaintiff brings this matter on behalf of himself and those similarly situated.  As detailed at length in this Complaint, Defendant orchestrated deceptive marketing and labeling practices.  Defendant's customers were uniformly impacted by and exposed to this misconduct. Accordingly, this Complaint is uniquely situated for class-wide resolution.

60.     The Class is defined as all consumers who purchased the Products anywhere in the United States during the Class Period.

61.     Plaintiff also seeks certification, to the extent necessary or appropriate, of a subclass of individuals who purchased the Products in the state of New York at any time during the Class Period (the "New York Subclass").

62. The Class and New York Subclass shall be referred to collectively throughout the Complaint as the Class.

63. The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

64. <u>Numerosity</u>: Class Members are so numerous that joinder of all members is impracticable. Plaintiff believes that there are thousands of consumers in the Class and the New York Class who are Class Members as described above who have been damaged by Defendant's deceptive and misleading practices.

65. <u>Commonality</u>: The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

      a. Whether Defendant was responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

      b. Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant has engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of its Products;

      c. Whether Defendant made false and/or misleading statements and omissions to the Class and the public concerning the contents of its Products;

      d. Whether Defendant's false and misleading statements and omissions concerning its Products were likely to deceive the public; and

> e.   Whether Plaintiff and the Class are entitled to money damages under the same causes of action as the other Class Members?

66.   <u>Typicality</u>: Plaintiff is a member of the Class.  Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased Defendant's Products.  Plaintiff is entitled to relief under the same causes of action as the other Class Members.

67.   <u>Adequacy</u>: Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the Class Members he seeks to represent, his consumer fraud claims are common to all members of the Class, he has a strong interest in vindicating his rights, he has retained counsel competent and experienced in complex class action litigation, and counsel intends to vigorously prosecute this action.

68.   <u>Predominance</u>: Pursuant to Rule 23(b)(3), common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class.  The Class issues fully predominate over any individual issues because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's deceptive and misleading marketing and labeling practices.

69.   <u>Superiority</u>: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

> a.   The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

> b.   The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claims, thereby making it

impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

c.   When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d.   This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e.   Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f.   This class action will assure uniformity of decisions among Class Members;

g.   The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

h.   Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by a single class action; and

i.   It would be desirable to concentrate in this single venue the litigation of all Class Members who were induced by Defendant's uniform false advertising to purchase their Products.

70.   Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members

predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## CLAIMS

### FIRST CAUSE OF ACTION
### VIOLATION OF NEW YORK GBL § 349
**(On Behalf of Plaintiff and New York Subclass Members)**

71.     Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

72.     New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

73.     The conduct of Defendant alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and the New York Subclass Members seek monetary damages against Defendant, enjoining them from inaccurately describing, labeling, marketing, and promoting the Products.

74.     There is no adequate remedy at law.

75.     Defendant misleadingly, inaccurately, and deceptively advertise and market their Products to consumers.

76.     Defendant's improper consumer-oriented conduct—including failing to disclose that the Products have *Pseudomonas aeruginosa*—is misleading in a material way in that it, *inter alia*, induced Plaintiff and the New York Subclass Members to purchase Defendant's Products and to use the Products when they otherwise would not have.  Defendant made the untrue and/or misleading statements and omissions willfully, wantonly, and with reckless disregard for the truth.

77.     Plaintiff and the New York Subclass Members have been injured inasmuch as they purchased Products that were mislabeled, unhealthy, and entirely worthless.  Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and paid for.

78.     Defendant's advertising and Products' packaging and labeling induced Plaintiff and the New York Subclass Members to buy Defendant's Products.

79.     Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and the New York Subclass Members have been damaged thereby.

80.     As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and the New York Subclass Members are entitled to monetary, statutory, compensatory, treble and punitive damages, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

<div align="center">

**SECOND CAUSE OF ACTION**
**VIOLATION OF NEW YORK GBL § 350**
**(On Behalf of Plaintiff and the New York Subclass Members)**

</div>

81.     Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

82.     N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

> False advertising in the conduct of any business, trade, or commerce or in the furnishing of any service in this state is hereby declared unlawful.

83.     N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

> The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination

thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

84.     Defendant's labeling and advertisements contain untrue and materially misleading statements and omissions concerning its Products inasmuch as it misrepresents that the Products are safe for use and doesn't list that the Products contain *Pseudomonas aeruginosa*.

85.     Plaintiff and the New York Subclass Members have been injured inasmuch as they relied upon the labeling, packaging, and advertising and purchased Products that were mislabeled, unhealthy, and entirely worthless.  Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and paid for.

86.     Defendant's advertising, packaging, and Products' labeling induced Plaintiff and the New York Subclass Members to buy Defendant's Products.

87.     Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

88.     Defendant's conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

89.     Defendant made the material misrepresentations described in this Complaint in its advertising and on the Products' packaging and labeling.

90.     Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large.  Moreover, all consumers purchasing the Products were and continue to be exposed to Defendant's material misrepresentations.

91.     As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and New York Subclass Members are entitled to monetary, statutory, compensatory,

treble and punitive damages, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

### THIRD CAUSE OF ACTION
### BREACH OF EXPRESS WARRANTY
**(On Behalf of Plaintiff and All Class Members)**

92.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

93.     Defendant provided Plaintiff and Class Members with an express warranty in the form of written affirmations of fact promising and representing that the Products are safe for use and do not contain *Pseudomonas aeruginosa*.

94.     Defendant omitted that the Products contain a known bacterium from its ingredients labeling. This omission would lead reasonable consumers did not contain a known bacterium, when in fact, the Products were contaminated with *Pseudomonas aeruginosa* as stated herein.

95.     The above affirmations of fact were not couched as "belief" or "opinion," and were not "generalized statements of quality not capable of proof or disproof."

96.     These affirmations of fact became part of the basis for the bargain and were material to Plaintiff and Class Members' transactions.

97.     Plaintiff and Class Members reasonably relied upon Defendant's affirmations of fact and justifiably acted in ignorance of the material facts omitted or concealed when they decided to buy Defendant's Products.

98.     Defendant knowingly breached the express warranties by including *Pseudomonas aeruginosa* in the Products sold to Plaintiff and the Class without properly notifying them of their inclusion in the Products.

99.     Within a reasonable time after it knew or should have known, Defendant did not change the Products' label to include *Pseudomonas aeruginosa* in the ingredients list.

100.    Defendant thereby breached the following state warranty laws:

a.     Code of Ala. § 7-2-313;

b.     Alaska Stat. § 45.02.313;

c.     A.R.S. § 47-2313;

d.     A.C.A. § 4-2-313;

e.     Cal. Comm. Code § 2313;

f.     Colo. Rev. Stat. § 4-2-313;

g.     Conn. Gen. Stat. § 42a-2-313;

h.     6 Del. C. § 2-313;

i.     D.C. Code § 28:2-313;

j.     Fla. Stat. § 672.313;

k.     O.C.G.A. § 11-2-313;

l.     H.R.S. § 490:2-313;

m.     Idaho Code § 28-2-313;

n.     810 I.L.C.S. 5/2-313;

o.     Ind. Code § 26-1-2-313;

p.     Iowa Code § 554.2313;

q.     K.S.A. § 84-2-313;

r.     K.R.S. § 355.2-313;

s.     11 M.R.S. § 2-313;

t.     Md. Commercial Law Code Ann. § 2-313;

u.      106 Mass. Gen. Laws Ann. § 2-313;

v.      M.C.L.S. § 440.2313;

w.      Minn. Stat. § 336.2-313;

x.      Miss. Code Ann. § 75-2-313;

y.      R.S. Mo. § 400.2-313;

z.      Mont. Code Anno. § 30-2-313;

aa.     Neb. Rev. Stat. § 2-313;

bb.     Nev. Rev. Stat. Ann. § 104.2313;

cc.     R.S.A. 382-A:2-313;

dd.     N.J. Stat. Ann. § 12A:2-313;

ee.     N.M. Stat. Ann. § 55-2-313;

ff.     N.Y. U.C.C. Law § 2-313;

gg.     N.C. Gen. Stat. § 25-2-313;

hh.     N.D. Cent. Code § 41-02-30;

ii.     II. O.R.C. Ann. § 1302.26;

jj.     12A Okl. St. § 2-313;

kk.     Or. Rev. Stat. § 72-3130;

ll.     13 Pa. Rev. Stat. § 72-3130;

mm.     R.I. Gen. Laws § 6A-2-313;

nn.     S.C. Code Ann. § 36-2-313;

oo.     S.D. Codified Laws, § 57A-2-313;

pp.     Tenn. Code Ann. § 47-2-313;

qq.     Tex. Bus. & Com. Code § 2.313;

rr.    Utah Code Ann. § 70A-2-313;

ss.    9A V.S.A. § 2-313;

tt.    Va. Code Ann. § 59.1-504.2;

uu.    Wash. Rev. Code Ann. § 6A.2-313;

vv.    W. Va. Code § 46-2-313;

ww.    Wis. Stat. § 402.313; and

xx.    Wyo. Stat. § 34.1-2-313.

101.    As a direct and proximate result of Defendant's breach of the express warranties, Plaintiff and Class Members were damaged in the amount of the price they paid for the Products, in an amount to be proven at trial.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues.

**WHEREFORE**, Plaintiff, on behalf of himself and the Class, prays for judgment as follows:

(a) Declaring this action to be a proper class action and certifying Plaintiff as the representative of the Class under Rule 23 of the FRCP;

(b) An Order requiring Defendant to establish a blood testing program for Plaintiff and the Class, as well as to establish a medical monitoring protocol for Plaintiff and the Class to monitor individuals' health and diagnose at an early stage any ailments associated with exposure to *Pseudomonas aeruginosa*;

(c) Awarding monetary damages and treble damages;

(d) Awarding statutory damages of $50 per transaction, and treble damages for knowing and willful violations, pursuant to N.Y. GBL § 349;

(e) Awarding statutory damages of $500 per transaction pursuant to N.Y. GBL § 350;

(f)  Awarding punitive damages;

(g)  Awarding Plaintiff and Class Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiff's attorneys, experts, and reimbursement of Plaintiff's expenses; and

(h)  Granting such other and further relief as the Court may deem just and proper.


Dated: November 1, 2022

<div style="margin-left:40%">

**THE SULTZER LAW GROUP P.C.**

By:     Jason P. Sultzer /s/
_____
Jason P. Sultzer, Esq.
Joseph Lipari, Esq.
Daniel Markowitz, Esq.
270 Madison Avenue, Suite 1800
New York, NY 10016
Tel: (845) 483-7100
Fax: (888) 749-7747
sultzerj@thesultzerlawgroup.com
liparij@thesultzerlawgroup.com
markowitzd@thesultzerlawgroup.com

David C. Magagna Jr., Esq.
Charles E. Schaffer, Esq.
LEVIN SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel: 215-592-1500
dmagagna@lfsblaw.com
cschaffer@lfsblaw.com

Jeffrey K. Brown, Esq.
LEEDS BROWN LAW, P.C.
1 Old Country Rd., Suite 347
Carle Place, NY 11514
Tel: (516) 873-9550
jbrown@leedsbrownlaw.com

*Counsel for Plaintiff and the Class*

</div>