**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

——————————————————————— x

Bryan Swetz,                          :
                                      :
              Plaintiff,              :    Case No. 7:22-cv-9374-PMH
v.                                    :
                                      :    The Honorable Philip M. Halpern
                                      :
The Clorox Company,                   :
                                      :
              Defendant.              :
                                      :
                                      :
                                      :
                                      :
                                      :
——————————————————————— x


**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR**
**PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, PRELIMINARY**
**CERTIFICATION OF SETTLEMENT CLASS, AND APPROVAL OF NOTICE PLAN**

Dated:  July 28, 2023          **THE SULTZER LAW GROUP P.C.**
                                Jason P. Sultzer, Esq.
                                Joseph Lipari, Esq.
                                Jeremy Francis, Esq.
                                85 Civic Center Plaza, Suite 200
                                Poughkeepsie, NY 12061
                                Tel: (845) 483-7100
                                Fax: (888) 749-7747
                                sultzerj@thesultzerlawgroup.com
                                liparij@thesultzerlawgroup.com
                                francisj@thesultzerlawgroup.com

                               **LEVIN SEDRAN & BERMAN**
                                Charles E. Schaffer, Esq.
                                David C. Magagna Jr., Esq.
                                510 Walnut Street, Suite 500
                                Philadelphia, PA 19106
                                Tel: 215-592-1500
                                cschaffer@lfsblaw.com
                                dmagagna@lfsblaw.com

**LEEDS BROWN LAW, P.C.**
Jeffrey K. Brown, Esq.
1 Old Country Rd., Suite 347
Carle Place, NY 11514
Tel: (516) 873-9550
jbrown@leedsbrownlaw.com

**SQUITIERI & FEARON, LLP**
Stephen J. Fearon, Jr.
 Paul Sweeny
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 421-6492
Facsimile: (212) 421-6553
Email: Stephen@sfclasslaw.com
Email: Paul@sfclasslaw.com

*Attorneys for Plaintiffs and the  Settlement Class*

## TABLE OF CONTENTS

Table of Contents…………………………………………………………………..i-ii

Table of Authorities……………………………………………………………..iii-vii

INTRODUCTION…………………………………………………………………...1

FACTUAL AND PROCEDURAL BACKGROUND………………………………………3

I.     THE LITIGATION HISTORY AND PLAINTIFFS' ALLEGATIONS…………..…3

II.    SETTLEMENT NEGOTIATIONS………………………………………………...5

III.   THE TERMS OF THE PROPOSED SETTLEMENT……………………………..7

    A.  The Settlement Class……………………………………………………8

    B.  Relief for the Settlement Class Members…………………………………8

    C.  The Release…………………………………………………………..……9

    D.  Attorneys' Fee, Cost, and Service Award…………………………………9

    E.  Settlement Administration and The Notice Plan…………………………9

ARGUMENT…………………………………………………………………………11

I.     PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE……..13

    A.  The *Grinnell* Factors……………………………………………….……13

        1.  *The Complexity, Expense, And Likely Duration Of The Litigation*………….13

        2.  *The Reaction of The Class To The Settlement*………………………………14

        3.  *The Stage of The Proceedings and The Amount of Discovery Completed*…..15

        4.  *The Risks of Establishing Liability and Damages*…………………………..16

        5.  *The Risk of Maintaining Class Action Status Through Trial*………………..17

        6.  *The Ability of Defendant to Withstand Greater Judgment*……………..…..17

        7.  *The Range of Reasonableness of The Settlement in Light of The Best Possible Recovery And In Light of All The Attendant Risks of Litigation*…..18

B.  The Rule 23(e)(2) Factors……………………………………………………19

    1.  *Class Counsel and Plaintiffs Adequately Represented the Class*…………....19

    2.  *The Settlement Was Negotiated at Arm's-Length*…………………………....19

    3.  *The Settlement Provides Adequate Relief to The Class*……………………...19

    4.  *The Settlement Treats All Class Members Equally*…………………………..21

II.    THE COURT SHOULD PRELIMINARILY CERTIFY THE SETTLEMENT
    CLASS………………………………………………………………………………21

    A.  The Settlement Class Meets All Prerequisites of Rule 23(a) Of The Federal
        Rules of Civil Procedure……………………………………………………………21

        1.  *Numerosity*……………………………………………………………....22

        2.  *Commonality*……………………………………………………………22

        3.  *Typicality*……………………………………………………………………22

        4.  *Adequacy*………………………………………………………………………23

    B.  The Settlement Class Meets the Requirements Of Rule 23(b)………………..…24

        1.  *Common Legal and Factual Questions Predominate In This Action*………..24

        2.  *A Class Action Is the Superior Means To Adjudicate Plaintiffs' Claims*…...25

III.    THE COURT SHOULD APPROVE THE PROPOSED NOTICE PLAN………….25

CONCLUSION………………………………………………………………………...27

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Amchem Prods. v. Windsor*,
  521 U.S. 591 (1997)...................................................................................24

*Asare v. Change Group N.Y., Inc.*,
  2013 U.S. Dist. LEXIS 165935 (S.D.N.Y Nov. 15, 2013).....................................15

*Augustin v. Jablonsky (In re Nassau County Strip Search Cases)*,
  461 F.3d 219 (2d Cir. 2006)........................................................................24

*In re Austrian & German Bank Holocaust Litig.*,
  80 F. Supp. 2d 164 (S.D.N.Y. 2000)...............................................................16

*Bangoura v. Beiersdorf, Inc. and Bayer Healthcare, Inc.*,
  1:22-cv-00291-BMC (E.D.N.Y.) ...................................................................21

*Banyai v. Mazur*,
  2007 WL 927583 (S.D.N.Y. Mar. 27, 2007) .....................................................16

*Bodon v. Domino's Pizza, LLC*,
  2015 WL 5886656 (E.D.N.Y. Jan. 16, 2015) ....................................................18

*Bryan Swetz v. The Clorox Company*
  (7:22-cv-09374-PMH) (S.D.N.Y.)...................................................................1

*Castagna v. Madison Square Garden, L.P.*,
  U.S. Dist. LEXIS 64218,
  2011 WL 2208614 (S.D.N.Y. Jun. 7, 2011) ......................................................16

*Charles v. Clorox Co.*,
  Case No. 4:22-cv-6855-HSG .................................................................4, 5, 27

*Charron v. Wiener*,
  731 F.3d 241 (2d Cir. 2013)...................................................................11, 23

*In re Citigroup Inc. Bond Litig.*,
  988 F. Supp. 2d 371 (S.D.N.Y. 2013).............................................................18

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974)............................................................... *passim*

*Clark v. Ecolab, Inc.*,
  2010 WL 1948198 (S.D.N.Y. May 11, 2010) .....................................................20

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001)……………………………………………………………...16

*D.S. v. New York City Dep't of Educ.*,
   255 F.R.D. 59 (E.D.N.Y. 2008) ..........................................................................15

*Dupler v. Costco Wholesale Corp.*,
   705 F. Supp. 2d 231 (E.D.N.Y. 2010) ................................................................13

*Marisol A. ex rel. Forbes v. Giuliani*,
   126 F.3d 372 (2d Cir. 1997)...........................................................................22, 23

*Gen. Tel. Co. of the Southwest v. Falcon*,
   457 U.S. 147 (1982)...........................................................................................17

*Grice v. Pepsi Bevs. Co.*,
   363 F. Supp. 3d 401, 408-09 (S.D.N.Y. 2019)………………………………………18

*In re GSE Bonds Antitrust Litig.*,
   414 F. Supp. 3d 686 (S.D.N.Y. 2019)............................................................19, 20

*In re GSE Bonds Antitrust Litig.*,
   414 F. Supp. 3pd ................................................................................................21

*Hadel v. Gaucho, LLC*,
   2016 U.S. Dist. LEXIS 33085 (S.D.N.Y. Mar. 14, 2016) ......................................11

*Hart v. BHH, LLC*,
   2017 WL 2912519 (S.D.N.Y. July 7, 2017) ........................................................22

*Hayes v. Harmony Gold Min. Co.*,
   2011 WL 6019219 (S.D.N.Y. Dec. 2, 2011), *aff'd*, 509 F. App'x 21 ....................20

*Hernandez v. Merrill Lynch & Co.*,
   2013 U.S. Dist. LEXIS 42681 (S.D.N.Y. Mar. 21, 2013) ......................................15

*Johnson v. Rausch, Sturm, Israel, Enerson & Hornik, LLP*,
   333 F.R.D. 314 (S.D.N.Y. 2019) ........................................................................12

*Kossel v. Clorox Co.*,
   Case No. 7:22-cv-10450 ........................................................................... *passim*

*Manley v. Midan Rest. Inc.*,
   2016 WL 1274577 (S.D.N.Y. Mar. 30, 2016) ...............................................12, 14

*McReynolds v. Richards-Cantave*,
   588 F.3d 790 (2d Cir. 2009)...............................................................................11

*Meredith Corp. v. SESAC, LLC*,
   87 F. Supp. 3d 650 (S.D.N.Y. 2015)....................................................................13, 14, 21, 25

*Michael Charles v. The Clorox Company*
   (4:22-cv-06855-HSG) (N.D. Cal.)......................................................................................1

*Mills v. Capital One, N.A.*,
   2015 WL 5730008 (S.D.N.Y. Sept. 30, 2015)...................................................................17

*In re Nassau Cty. Strip Search Cases*,
   461 F.3d at 227–28 ..........................................................................................................25

*In re Nissan Radiator/Transmission Cooler Litig.*,
   2013 WL 4080946 (S.D.N.Y. May 30, 2013) ...................................................................23

*Olivia Kossel, et. al. v. The Clorox Company*
   (7:22-cv-10450-PMH) (S.D.N.Y.)......................................................................................1

*Patora v. Tarte, Inc.*,
   Case No. 18-cv-11760-KMK (S.D.N.Y.) .........................................................................20

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   986 F. Supp. 2d 207 (E.D.N.Y. 2013) .............................................................................15

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
   2019 WL 6875472 (E.D.N.Y. Dec. 16, 2019) .................................................................13

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
   330 F.R.D. 11 (E.D.N.Y. 2019) ...........................................................................19, 20, 21

*Rapoport-Hecht v. Seventh Generation*,
   Case No. 7:14-cv-09087 (S.D.N.Y.) ...............................................................................20

*Reyes v. Altamarea Grp.*,
   2011 WL 4599822 (S.D.N.Y. Aug. 16, 2011) .................................................................20

*Robidoux v. Celani*,
   987 F.2d 931 (2d Cir. 1993)............................................................................................23

*Rosi v. Aclaris Therapeutics, Inc*.,
   2021 WL 5847420 (S.D.N.Y. Dec. 9, 2021) ...................................................................18

*Shaya Eidelman v. Sun Prods. Corp.*,
   2022 U.S. App. LEXIS 15480 (2d Cir. 2022) .................................................................17

*In re Sinus Buster Prods. Consumer Litig.*,
   2014 WL 5819921 (E.D.N.Y. Nov. 10, 2014)..................................................................17

*Swetz v. Clorox Co.*,
  Case No. 7:22-cv-9374-PMH ...................................................................3, 5, 27

*Swetz v. GSK Consumer Health, Inc.*,
  7:20-cv-04731-NSR (S.D.N.Y)………………………………………………...20

*Tart v. Lions Gate Ent. Corp.*,
  2015 WL 5945846 (S.D.N.Y, Oct. 13, 2015) ................................................24, 25

*Vargas v. Capital One Fin. Advisors*,
  559 F. App'x 22 (2d Cir. 2014) .........................................................................25

*Viafara v. MCIZ Corp.*,
  2014 WL 1777438 (S.D.N.Y. Apr. 30, 2014) .....................................................17

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ...........................................................................................22

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
  396 F.3d 96 (2d Cir. 2005)............................................................... *passim*

*In re Warner Chilcott Ltd. Sec. Litig.*,
  2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008) ...................................................14

**Statutes**

28 U.S.C. §1715....................................................................................................10

California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.* (4) ...........................4

California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.* (5)...........................4

California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.*, and (6)………….4

Fed. R. Civ. P. 23 ................................................................................... *passim*

Fed. R. Civ. P. 23(a)(3)........................................................................................22

Fed. R. Civ. P. 23(a)(4)........................................................................................23

Fed. R. Civ. P. 23(c) ...........................................................................................3

Fed. R. Civ. P. 23(e)(2)(C)(i-iv)..........................................................................19

Federal Rules Of Civil Procedure Rule 23(a) .....................................................21

Rule 23(a)(1)........................................................................................................22

Rule 23(a) and Rule 23(b)(3) .........................................................................21, 24

Rule 23(b) ..................................................................................................................24

Rule 23(b)(1), (b)(2) ..............................................................................................24, 25

Rule 23(b)(3) ........................................................................................................24, 25

Rule 23(c)(2)(B) .........................................................................................................26

Rule 23(c)(3) ..............................................................................................................26

Rule 23(e) .............................................................................................................13, 26

Rule 23(e)(1)(B) .........................................................................................................25

Rule 23(e)(3) .....................................................................................................13, 19, 21

Plaintiffs Bryan Swetz, Michael Charles, Olivia Kossel, Tina Donohue, and Alyce Lacey (collectively "Plaintiffs")[1], respectfully submit this memorandum of law in support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, Preliminary Certification of Settlement Class, and Approval of Notice Plan.[2]

## **INTRODUCTION**

This proposed class action settlement would resolve the claims of purchasers of Defendant The Clorox Company's Pine-Sol® Scented cleaning products (the "Class Products").[3]  In the Litigation (defined below), Plaintiffs asserted claims seeking to recover economic damages individually and on behalf of a nationwide class of purchasers of the Class Products, which Plaintiffs alleges were deceptively and misleadingly marketed, advertised, labeled, and sold while containing or at the risk of potentially containing the harmful bacteria *Pseudomonas aeruginosa*. In addition to obtaining substantial monetary relief for the Class, Plaintiffs believe that this settlement also serves an important public good by deterring corporations from allowing potentially harmful product contamination and encouraging stricter testing protocols.  *See* Brian T. Fitzpatrick, THE CONSERVATIVE CASE FOR CLASS ACTIONS (2019) at Chapter 8.

Defendant has defended the Litigation on several grounds.  It has argued that its recall of

---

[1] The Settlement Agreement resolves the economic claims of three separate actions involving similar claims: *Bryan Swetz v. The Clorox Company* (7:22-cv-09374-PMH) (S.D.N.Y.); *Michael Charles v. The Clorox Company* (4:22-cv-06855-HSG) (N.D. Cal.); and *Olivia Kossel, et. al. v. The Clorox Company* (7:22-cv-10450-PMH) (S.D.N.Y.) ("*Kossel* Action").

[2] Unless otherwise indicated, capitalized terms shall have the same meaning as they do in the Settlement Agreement. References to "§ __" are to sections in the Settlement Agreement, submitted as Exhibit 1 to the Declaration of Jason P. Sultzer In Support of Plaintiffs' Motion for Preliminary Approval (the "Sultzer Decl.") and all Settlement Agreement Exhibits are referred to as "Ex [Letter]."

[3] The "Class Products" are defined in § 2.12 of the Settlement Agreement.  "Class Products" means all Pine-Sol® Scented products, including, but not limited to, Pine-Sol® Multi-Surface Cleaners in Lavender Clean®, Sparkling Wave®, and Lemon Fresh scents; all CloroxPro® Pine-Sol® All Purpose Cleaners in Lavender Clean®, Sparking Wave®, Lemon Fresh, and Orange Energy® scents; and Clorox® Professional™ Pine-Sol® Lemon Fresh cleaners. A full list of the "Class Products" is available at https://pinesolrecall.com/.  The Settlement, however, does not resolve any alleged personal injury claims.

the Class Products rendered Plaintiffs' claims prudentially moot.  *See* Decl. of Jason Sultzer ("Sultzer Decl.") ¶ 7.  Defendant has also argued that this case is not suited for class-wide treatment due to individualized issues associated with determining whether a given class member purchased a contaminated product and whether the purchase was due to any alleged misrepresentation or omission (including product labels, websites, etc.).  *See id.*  Nevertheless, Defendant has agreed to enter into this Settlement Agreement to avoid further expense, to dispose of burdensome and protracted litigation, and to avoid the uncertain outcome of proceeding in the Litigation.  § 1(I).

To settle the Litigation, Defendant will establish a Settlement Fund of $5.65 million, with no right to reversion, that will compensate Class Members' Claims, pay Notice and Other Administrative Costs, pay Court-approved reasonable attorneys' fees and costs, and pay any Court-approved Service Awards to the Class Representatives.[4]  *See* § 3.1.  The Settlement provides monetary relief to Class Members who were not eligible for, or who otherwise did not receive, a refund through Clorox's Recall of the Class Products.

As demonstrated below, the Settlement satisfies the relatively low threshold required for preliminary approval.   The parties reached the Settlement after significant arm's-length negotiations with the assistance of a highly respected mediator and former federal magistrate judge, the Honorable Steven Gold (Ret.).  The Settlement provides monetary relief beyond what Defendant's voluntary recall provided[5], while avoiding the additional expenses, risk, and uncertainty of continued and protracted litigation.

---

[4] Defendant has agreed to pay service awards to the Class Representatives of up to $1,000 per representative (*See* §§ 3.1 & 4.1)
[5] Until recently, the recall required proof of purchase for a refund. Under the Settlement Agreement, Settlement Class Members who submit an Approved Claim Form without Proof of Purchase shall receive $3.57 USD per Class Product purchased, which reflects the average retail price of the Class Products during the Class Period, up to a maximum of two (2) Class Products. § 5.2.

Accordingly, Plaintiffs respectfully request the Court enter an Order: (1) preliminarily approving the proposed Settlement Agreement, including the exhibits attached thereto; (2) preliminarily certifying a proposed national class for settlement purposes only, and appointing Plaintiffs and their Counsel as settlement Class Representatives and Class Counsel; (3) approving the notice plan and forms of notice to the class because they meet the requirements of due process and are the best notice practicable under the circumstances (*see* Fed. R. Civ. P. 23(c)); and (4) setting dates and procedures for opt outs, objections, and a final approval hearing.

## FACTUAL AND PROCEDURAL BACKGROUND

## I.        THE LITIGATION HISTORY AND PLAINTIFFS' ALLEGATIONS

On October 25, 2022, Defendant announced the voluntary recall of certain Pine Sol® Scented cleaning products throughout the United States due to the potential for contamination with *Pseudomonas aeruginosa*.  The U.S. Consumer Product Safety Commission ("CPSC") and Clorox warned consumers to "immediately stop using" the products and "dispose of the product in its container with household trash" "due to [the] risk of exposure to bacteria."

As part of its recall of the Class Products, Defendant offered a full refund to any consumer who submitted a photo of the affected product's UPC code and date code showing when the product was manufactured.  To date, Clorox has issued refunds for tens of thousands of the Class Products in connection with this recall.  Clorox also agreed that it would implement a corrective action plan in coordination with the CPSC to minimize the risk of future contamination.

On November 1, 2022, Swetz filed a putative class action against Clorox in this Court, styled *Swetz v. Clorox Co.*, Case No. 7:22-cv-9374-PMH (the "*Swetz* Action"), on behalf of a putative nationwide class of consumers who purchased the Class Products, as well as a putative New York subclass of consumers who purchased the Class Products, asserting claims for (1) violations of N.Y. G.B.L. § 349, (2) violations of N.Y. G.B.L. § 350, and (3) breach of express

warranty.

On November 3, 2022, Plaintiff Michael Charles filed a putative class action against Clorox in the U.S. District Court for the Northern District of California styled *Charles v. Clorox Co.*, Case No. 4:22-cv-6855-HSG (the "*Charles* Action"), on behalf of a putative nationwide class of consumers who purchased the Class Products, as well as putative California and New York subclasses of consumers who purchased the Class Products, asserting claims for (1) violations of N.Y. G.B.L. § 349, (2) violations of N.Y. G.B.L. § 350, (3) violations of the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq.*, (4) violations of the California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500 *et seq.*, (5) violations of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*, and (6) breach of express warranty.

On December 9, 2022, Plaintiff Olivia Kossel filed a putative class action against Clorox in this Court, styled *Kossel v. Clorox Co.*, Case No. 7:22-cv-10450 (the "*Kossel* Action"). On or around March 17, 2023, Plaintiffs Olivia Kossel, Tina Donohue, Alyce Lacey, and Alexis McChorn filed their operative second amended class action complaint in the *Kossel* Action on behalf of a putative "Economic Injury Class" of all United States residents who purchased the Class Products, as well as a putative "Physical Injury Class" of all United States residents who allegedly suffered physical injuries as a result of using the Class Products, asserting claims for (1) violations of the UCL, (2) violations of the FAL, (3) strict products liability under a design defect theory, (4) strict products liability under a manufacturing defect theory, and (5) strict products liability under a failure-to-warn theory.[6]

---

[6] Three of the four plaintiffs in the *Kossel* Action allege that they were injured after using the contaminated products. Those personal injury claims are the subject of separate settlement discussions between Clorox and the personal injury plaintiffs and will be resolved separately from the resolution of the economic claims in these actions.

The Settlement Agreement resolves the economic claims asserted in the *Swetz*, *Charles*, and *Kossel* Actions, which are collectively referred to as the "Litigation."  Class Counsel worked cooperatively to coordinate the Litigation and to save judicial time and resources, to consolidate the multiple similar litigations without a protracted battle for lead counsel, and to lead the case to mediation and an early resolution.  Sultzer Decl. ¶ 11.

On April 7, 2023, Defendant filed a pre-motion letter in the *Kossel* Action in which it argued that its recall rendered the claims of the class prudentially moot.  Defendant's letter also indicated that it intended to move to strike the class allegations on the grounds that individual issues (including whether the purchased products were contaminated, and the source of any misrepresentation or omission (product labels websites, etc.)) predominated over any common questions.  (*Kossel* Action, Dkt. 25).  Plaintiffs in the *Kossel* Action responded by letter on April 11, 2023.  (*Kossel* Action, Dkt. 26).    Plaintiffs argued that (1) "prudential mootness" cannot provide a basis for dismissal where, as here, the case is in its pre-discovery stage, and where the extent to which the refund campaign has fully compensated, or will fully compensate, the putative class members is an open question; (2) the complaint seeks injunctive relief that could not be mooted by the recall; and (3) Defendant's failure to warn on the labeling about the presence (or potential presence) of *Pseudomonas aeruginosa* in the Products is common to the entire class and predominates over any individual questions.

## II.    SETTLEMENT NEGOTIATIONS

The Settlement was reached as a result of extensive arm's-length negotiations between the Parties and counsel, facilitated by a mediation with a respected mediator and retired federal Magistrate Judge, the Honorable Steven Gold (Ret.), on June 7, 2023.  Before and during these settlement discussions and mediation, the Parties had arm's-length exchanges of sufficient information to permit Plaintiffs and their counsel to evaluate the claims and potential defenses and

to meaningfully conduct informed settlement discussions. The Parties did not discuss Attorneys' Fees and Costs or any potential Incentive Award until they first agreed on the substantive terms of this settlement. Sultzer Decl. ¶ 17. Defendant denies all Plaintiffs' allegations and all charges of wrongdoing or liability against it arising out of any of the conduct, statements, acts or omissions alleged, or that could have been alleged against it, in the Litigation. § 1(H).

Class Counsel worked together to thoroughly analyze the legal landscape, including conducting research into the various state consumer protection laws and available remedies, and evaluating matters relating to class certification, in order to fully evaluate the risks and benefits to a potential early resolution. Sultzer Decl. ¶ 11.

Class Counsel conducted a detailed and extensive analysis of the claims alleged in the Complaint, including labeling claims for the Class Products, the relevant regulations concerning labeling and advertising disclosure requirements for these types of cleaning products, regulatory and scientific guidelines regarding the presence of *Pseudomonas aeruginosa* in consumer products, and the scientific research concerning the dangers of *Pseudomonas aeruginosa*. Sultzer Decl. ¶ 11. In addition, Class Counsel hired an independent laboratory to conduct their own testing on certain of the Class Products for the presence of *Pseudomonas aeruginosa*. *Id.* ¶ 12. Moreover, Class Counsel analyzed the chain of distribution of the Class Products and pricing per unit to help support and determine Plaintiffs' damages model. *Id.* ¶ 13. Class Counsel also conducted research into the cleaning products marketplace to understand the potential scope of this matter and marketing and sales trends, practices, and patterns for the cleaning products industry. *Id.* ¶ 14.

Based on the Parties' exchange of discovery to date and their respective investigations into the claims and defenses asserted in the actions, the parties agreed to engage in settlement negotiations with a private mediator. *Id.* ¶ 15. In connection with the mediation, Class Counsel requested significant mediation discovery to evaluate the claims and position themselves to

negotiate a settlement that would be fair and reasonable on behalf of the Settlement Class. Defendant produced documents and information regarding the sales data of Class Products throughout the Class Period, its quality control and testing procedures regarding contaminants, including *Pseudomonas aeruginosa*, and information pertaining to the Recall. *Id*. Plaintiffs also conducted their own due diligence regarding the testing protocols and procedures that Defendant put in place after the contamination was discovered. This information was critical to Plaintiffs' determination that the cause of the contamination has been resolved.

The settlement negotiations were conducted at arm's-length over a period of several weeks. *Id*. ¶ 16. On June 7, 2023, the Parties participated in an all-day mediation with Judge Gold. *Id*. ¶ 18. With Judge Gold's assistance, the Parties reached an agreement in principle at the mediation session. However, the Parties continued to pursue settlement discussions for several weeks, working out the details of the settlement and culminating in the attached Settlement Agreement, which is the product of hard-fought, arm's-length negotiations. *Id*. ¶ 19.

The Settlement Agreement resolves claims for economic harm regarding Defendant's use of allegedly misleading labels on, and marketing and promotion concerning, the presence and potential presence of *Pseudomonas aeruginosa* in the Class Products and provides significant monetary relief to the Settlement Class Members by way of a Settlement Fund of $5.65 million. The Settlement Agreement excludes the release of any claims for personal or bodily injury, including those alleged in the *Kossel* Action.

## III.    THE TERMS OF THE PROPOSED SETTLEMENT

The Settlement Agreement defines the Settlement Class, describes the Parties' agreed upon exchange of consideration, and proposes a plan for disseminating notice and administering claims for the Settlement Class Members. Sultzer Decl., Ex 1.

**A.    The Settlement Class**

The Parties agree to certification of a nationwide Settlement Class for settlement purposes,

defined as follows:

> All persons in the United States who, between November 1, 2018 and the
> Preliminary Approval Date, purchased in the United States, for household use and
> not for resale or distribution, one or more of the Class Products, as defined below.

§ 2.6.

**B.    Relief for the Settlement Class Members**

The Settlement Agreement provides that Defendant will establish a Settlement Fund in the

amount of $5.65 million, which will be exhausted to pay all Approved Claims, as well as any

attorneys' Fee Award Service Awards,[7] and Notice and Other Administrative Costs that are

approved by the Court.  §3.1.  Settlement Class Members who submit a Claim Form with Proof of

Purchase shall receive the full purchase price for each Class Product listed on the Proof of

Purchase. § 5.3.  Settlement Class Members who submit a Claim Form without Proof of Purchase

shall receive a total of $3.57 USD per Class Product purchased, which reflects the average retail

price of the Class Products during the Class Period, up to a maximum of two (2) Class Products.

§ 5.2. A Class Member who received a refund for one or more of the Class Product(s) in connection

with the Recall shall not receive a Cash Award for refunded Class Product(s), but may receive a

Cash Award for Class Product(s) not refunded in connection with the Recall. § 5.3.

Each Settlement Class Member's payment shall be increased or decreased on a *pro rata*

basis such that the total amount paid to all Settlement Class Members equals the Available

Settlement Funds.  § 5.6.  In the event any checks issued to pay valid Claims are uncashed or not

redeemed for 180 days, such funds shall be donated to Equal Justice Works.  § 5.8.  All of this

---

[7] Defendant has agreed to pay service awards to the Class Representatives for up to $1,000 per representative (See §
4.1)

ensures that *no settlement funds* will revert to Defendant.

### C.    The Release

The Settlement Agreement provides that upon the Effective Date, Settlement Class Members shall forever release Defendant from any and all claims arising out of or related to the Litigation, including claims related to the presence of *Pseudomonas aeruginosa* or any other bacteria or contaminant in the Class Products that were, or could have been, asserted in this Litigation and any claims arising from alleged omissions or misrepresentations concerning the presence of *Pseudomonas aeruginosa* in the Class Products, other than claims for non-economic damages premised on alleged physical or bodily injuries arising from any Class Member's use of or exposure to the Class Products.  § 8.1.

### D.    Attorneys' Fee, Cost, and Service Award

Prior to the scheduled hearing on Final Approval and in accordance with the Court's regular notice requirements, Plaintiffs' Counsel may apply to the Court for an award of their Attorneys' Fees and Costs.  § 4.1.  In addition, prior to the scheduled hearing on Final Approval and in accordance with the Court'' regular motion requirements, the Class Representatives may apply to the Court for a Service Award payable from the Settlement Fund of up to $1,000 each as compensation for (a) the time and effort undertaken in and risks of pursuing this Litigation.  § *Id.* Defendant will have an opportunity to object to the application should it so desire.

### E.    Settlement Administration and The Notice Plan

The Settlement Agreement seeks appointment of Angeion Group ("Angeion") as the Claim Administrator to effectuate and administer the Notice Plan.  Before selecting Angeion, Plaintiffs sought multiple bids from claims administrators and interviewed and vetted Angeion and its proposed notice plan for this settlement.  Sultzer Decl. ¶ 22. The Parties selected Angeion based on its reputation for excellent work and breadth of experience administering other similar

consumer class actions. *Id.* ¶ 23.

The Claim Administrator shall establish the Settlement Website, which shall contain the Long Form Notice in both downloadable PDF format and HTML format with a clickable table of contents; answers to frequently asked questions; a Contact Information page that includes the address for the Claim Administrator and addresses and telephone numbers for Plaintiffs' Counsel; the operative Class Action Complaint; the Agreement; the signed Preliminary Approval Order; a downloadable and online version of the Claim Form; a downloadable and online version of the form by which Settlement Class Members may exclude themselves from the Settlement Class; and (when it becomes available) Plaintiffs' application for Attorneys' Fees and Costs and/or an application for Incentive Awards. § 6.3; Sultzer Decl. Ex. 2.

Angeion, with the assistance of the Parties, developed the Notice Plan, which includes: (1) Notice of Settlement and Claim Form sent by electronic mail to consumers who provided their email addresses as part of the recall or; (2) digital/internet publication designed to target purchasers of the Class Products; (3) a dedicated Settlement Website though which Settlement Class Members can obtain more detailed information about the settlement and access case documents; (4) a toll-free telephone number through which Settlement Class Members can obtain additional information about the settlement and that will direct them to the Settlement Website; and (5) all required notices in accordance with Defendant's obligations pursuant to 28 U.S.C. §1715. *See* Sultzer Decl. Ex. 2; Settlement Agreement Exs 1 & 2.

Angeion analyzed the demographic and media usage of potential Settlement Class Members to ensure the notice effectively targets the Settlement Class. *See* Sultzer Decl. Ex. 2 ¶¶ 19-27. Specifically, Angeion designed a media campaign that is estimated to reach at least 75.2% of potential Settlement Class Members. *Id.* ¶¶ 13 & 45; FEDERAL JUDICIAL CENTER, JUDGES' CLASS ACTION NOTICE AND CLAIMS PROCESS CHECKLIST AND PLAIN LANGUAGE GUIDE, at 3

(2010) (explaining a proposed notice plan should "reach between 70-95%" of class members). The media campaign will consist of a digital effort utilizing a form of internet advertising known as Programmatic Display Advertising, which is the leading method of buying digital advertisements in the United States, to provide notice of the Settlement to Class Members. *Id.* ¶ 19. The media plan will also include a campaign on the top social media sites (Facebook and Instagram) and a paid search campaign on Google. *Id.* ¶¶ 28-31. The digital effort utilizes best practices in targeting the Settlement Class and will directly link users to the Settlement Website where they can access more information, as well as file an online claim. *Id.* ¶ 33. Notice of the Settlement will further be promoted via a sponsored listing on a leading consumer facing website. *Id.* ¶ 32. In addition to the digital effort, direct notice by email to any known Settlement Class Members will extend notice exposure further. *Id.* ¶¶ 15-18.

## **ARGUMENT**

Under Rule 23(e)(2) of the Federal Rules of Civil Procedure, a court may approve a class action settlement "only . . . on finding that [the settlement agreement] is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The "fair, reasonable, and adequate" standard effectively requires parties to show that a settlement agreement is both procedurally and substantively fair. *Charron v. Wiener*, 731 F.3d 241, 247 (2d Cir. 2013).[8] The Second Circuit has recognized a "strong judicial policy in favor of settlements, particularly in the class action context." *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) ("*Visa*")). "The compromise of complex litigation is encouraged by the courts and favored by public policy." *Visa*, 396 F.3d at 117; *see also Hadel v. Gaucho, LLC*, 2016 U.S. Dist. LEXIS 33085, at *4 (S.D.N.Y. Mar. 14, 2016) ("Courts encourage early settlement of class actions, when warranted, because early settlement allows class members

---

[8] All internal citations and quotations omitted unless otherwise noted.

to recover without unnecessary delay and allows the judicial system to focus resources elsewhere."). A "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Visa*, 396 F.3d at 116 (quoting MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.42 (1995)).

"Preliminary approval is the first step in the settlement of a class action whereby the court must preliminarily determine whether notice of the proposed settlement [] should be given to class members in such a manner as the court directs, and an evidentiary hearing scheduled to determine the fairness and adequacy of settlement." *Manley v. Midan Rest. Inc.*, 2016 WL 1274577, at *8 (S.D.N.Y. Mar. 30, 2016). "To grant preliminary approval, the court need only find that there is 'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness." *Id.* "If the proposed settlement appears to fall within the range of possible approval, the court should order that the class members receive notice of the settlement." *Id.*

In evaluating a class action settlement, courts in the Second Circuit consider the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) ("*Grinnell*"). The *Grinnell* factors are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Id.* at 463.

Courts should also consider the "four enumerated factors in the new [Federal Rule of Civil Procedure] Rule 23(e)(2), in addition to the nine *Grinnell* factors." *Johnson v. Rausch, Sturm,*

*Israel, Enerson & Hornik, LLP*, 333 F.R.D. 314, 420 (S.D.N.Y. 2019). The Rule 23(e) factors are

whether:

> (A) the class representatives and class counsel have adequately represented the
> class; (B) the proposal was negotiated at arm's length; (C) the relief provided for
> the class is adequate, taking into account (i) the costs, risks, and delay of trial and
> appeal; (ii) the effectiveness of any proposed method of distributing relief to the
> class, including the method of processing class-member claims; (iii) the terms of
> any proposed award of attorney's fees, including timing of payment; and (iv) any
> agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats
> class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). The Rule 23(e)(2) factors significantly overlap or implicate the *Grinnell*

factors, and the Rule 23(e)(2) factors do not displace the *Grinnell* factors. *In re Payment Card*

*Interchange Fee and Merchant Discount Antitrust Litig.*, 2019 WL 6875472, at *14 (E.D.N.Y.

Dec. 16, 2019).

## I.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE

### A.    The *Grinnell* Factors

#### 1.    *The Complexity, Expense, And Likely Duration Of The Litigation*

"The greater the 'complexity, expense and likely duration of the litigation,' the stronger

the basis for approving a settlement." *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 663

(S.D.N.Y. 2015). Consumer class action lawsuits by their very nature are complex, expensive,

and lengthy. *See*, *e.g., Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 239 (E.D.N.Y.

2010). Should the Court decline to approve the proposed settlement and litigation were to resume,

it would be costly, complex, and time-consuming.

At the class certification stage, Defendant would argue that this case is unsuited to class-

wide treatment because Plaintiffs' claims require individualized inquiries into whether each of the

Class Products was actually contaminated with *Pseudomonas aeruginosa* bacteria and whether the

purchasing Plaintiff suffered an economic injury as a result. Although Plaintiffs are confident that

they would succeed in certifying a class, Defendant would undoubtedly require Plaintiff to expend significant resources litigating a contested class certification motion and opposing Defendant's efforts to decertify the class and/or appeal the class certification ruling. Plaintiffs expect there would likely be a lengthy and expensive battle of the experts about whether a reasonable consumer would expect the Class Products to be free from *Pseudomonas aeruginosa*; the extent to which the Class Products contained *Pseudomonas aeruginosa*; whether Plaintiffs and/or any potential class members sustained any damages; and the reliability of competing damages models, as well as the reliability of consumer surveys and statistical analysis employed to derive the price premium consumers paid for each alleged falsely advertised product attribute. Each step towards trial would be subject to Defendant's vigorous opposition. Even if the case were to proceed to judgment on the merits, any final judgment would likely be appealed, which also would take significant time and resources.

Moreover, Defendant would likely offer substantial defenses at trial concerning its lack of knowledge regarding the presence of *Pseudomonas aeruginosa* in the Class Products and the efforts it took to remedy the bacterial contamination through its voluntary Recall. Although Plaintiffs believes they would ultimately prevail, "litigation of this matter . . . . .through trial would be complex, costly and long." *Manley*, 2016 WL 1274577, at *9. "The settlement eliminates [the] costs and risks" associated with further litigation. *Meredith Corp.*, 87 F. Supp. 3d at 663. "It also obtains for the class prompt [] compensation for prior [] injuries." *Id.* For all of these reasons, this factor weighs strongly in favor of preliminary approval.

    2.  *The Reaction of The Class To The Settlement*

It is premature to address the reaction of the Settlement Class at the preliminary approval stage. *In re Warner Chilcott Ltd. Sec. Litig.*, 2008 WL 5110904, at *2 (S.D.N.Y. Nov. 20, 2008).

3.    *The Stage of The Proceedings and The Amount of Discovery Completed*

The third *Grinnell* factor considers "whether Class Plaintiffs had sufficient information on the merits of the case to enter into a settlement agreement . . .and whether the Court has sufficient information to evaluate such a settlement." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 986 F. Supp. 2d 207, 224 (E.D.N.Y. 2013).  As set forth above, Class Counsel have conducted significant informal discovery related to Plaintiffs' claims, including extensive sales, distribution and marketing information regarding the Class Products, and the technical scientific information pertaining to the manufacturing process and suppliers regarding the sources and reasons for the Pseudomonas aeruginosa contamination, as well as the protocols put in place by Defendant to ensure that such a contamination does not reoccur.  Sultzer Decl. ¶ 15.  This is largely the information that Class Counsel would have reviewed had the matter proceeded to formal discovery.  *Id.*  In addition, Class Counsel conducted their own testing of the Class Products. *Id.*  Thus, Plaintiffs had sufficient information to evaluate the claims of the class.  *See D.S. v. New York City Dep't of Educ.*, 255 F.R.D. 59, 77 (E.D.N.Y. 2008) ("The amount of discovery undertaken has provided plaintiffs' counsel 'sufficient information to act intelligently on behalf of the class in reaching a settlement.").

Courts in this district routinely approve settlements of class actions at the early stages of class actions because it allows the class members to recover without the delay that such complex cases usually entail, especially where, as here, the settlements were brought about by the skill and diligence of Class Counsel in evaluating the claims and damages on the litigation.  *See Asare v. Change Group N.Y., Inc.*, 2013 U.S. Dist. LEXIS 165935, *55 (S.D.N.Y Nov. 15, 2013) (granting final approval of class action settlement where "Class Counsel's skill and experience was directly responsible for this favorable settlement reached in an efficient manner without great Court intervention at an early stage of litigation."); *Hernandez v. Merrill Lynch & Co.,* 2013 U.S. Dist.

LEXIS 42681, *14 (S.D.N.Y. Mar. 21, 2013) ("courts encourage early settlement of class actions, when warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere."); *Castagna v. Madison Square Garden, L.P.,* U.S. Dist. LEXIS 64218, 2011 WL 2208614, at *6 (S.D.N.Y. Jun. 7, 2011) (commending Plaintiffs' attorneys for negotiating early settlement);

4.    *The Risks of Establishing Liability and Damages*

"[I]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *Banyai v. Mazur*, 2007 WL 927583, at *9 (S.D.N.Y. Mar. 27, 2007). In weighing the risks of certifying a class and establishing liability and damages, the court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom.*, *D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001). Plaintiffs recognize that, as with any litigation, uncertainties exist. Defendant continues to deny Plaintiffs' allegations, and should this matter proceed, Plaintiffs expect Defendant will vigorously defend itself on the merits, at each stage of litigation and likely on appeal.

Most fundamentally, while Plaintiffs believe a reasonable consumer would be misled by the failure to disclose that the Class Products could potentially contain Pseudomonas aeruginosa, a jury might not agree. In addition, Plaintiffs anticipate a zealous "battle of the experts" with respect to extent of *Pseudomonas aeruginosa* contamination, the amount of bacteria in each contaminated bottle, the health effects of exposure to *Pseudomonas aeruginosa* bacteria, and the calculations of damages. For these reasons, although Plaintiffs are confident in the merits of their case, the risks of establishing liability and damages at trial and on appeal strongly support preliminary approval.

   5.    *The Risk of Maintaining Class Action Status Through Trial*

The Litigation settled before rulings on class certification, and the current certification is for settlement purposes only. § 7.1.  As discussed above, in addition to the challenges inherent in certifying a potential national class, Plaintiffs must proffer a suitable mechanism for calculating damages in the form of a class-wide price premium.  While Plaintiffs believe they could establish the existence of such a premium to the Court's satisfaction, as a number of Courts in this Circuit have (*see Shaya Eidelman v. Sun Prods. Corp*., 2022 U.S. App. LEXIS 15480, *1 (2d Cir. 2022) ("One method of demonstrating actual injury in the consumable goods context is by showing that the plaintiff paid a price premium")), this proposed settlement eliminates the unavoidable risk that they cannot.  Furthermore, even if the Court were to certify a litigation class, the certification would not be set in stone.  *See Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 160 (1982) ("Even after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation.").  Given the risks, this factor weighs in favor of preliminary approval.  *See*, *e.g.*, *Mills v. Capital One, N.A.*, 2015 WL 5730008, at *14 (S.D.N.Y. Sept. 30, 2015) ("[V]ictory in a contested suit would have been far from clear as there was case law contrary to plaintiffs' position.").

   6.    *The Ability of Defendant to Withstand Greater Judgment*

"Courts have recognized that a [defendant's] ability to pay is much less important than the other *Grinnell* factors, especially where the other factors weigh in favor of approving the settlement." *In re Sinus Buster Prods. Consumer Litig.*, 2014 WL 5819921, at *11 (E.D.N.Y. Nov. 10, 2014).  Thus, Defendant's "ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Viafara v. MCIZ Corp.*, 2014 WL 1777438, at *7 (S.D.N.Y. Apr. 30, 2014).  Therefore, at worst, this factor is neutral.

7.      *The Range of Reasonableness of The Settlement in Light of The Best*
        *Possible Recovery And In Light of All The Attendant Risks of Litigation*

"There is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Visa*, 396 F.3d at 119.  "In other words, the question for the Court is not whether the settlement represents the highest recovery possible . . . but whether it represents a reasonable one in light of the many uncertainties the class faces." *Bodon v. Domino's Pizza, LLC*, 2015 WL 5886656, at *6 (E.D.N.Y. Jan. 16, 2015).  Indeed, courts within this Circuit have found approved settlements providing a small fraction of the total estimated recovery in light of the risks of litigation. *See In re Citigroup Inc. Bond Litig.*, 988 F. Supp. 2d 371, 379-80 (S.D.N.Y. 2013) (awarding requested fees where recovery amounted to 24% of total damages and noting "[t]hough the recovery here . . . represents only a fraction of the possible recovery estimated by plaintiffs' damages experts . . . that fraction is still an impressive result."); *Rosi v. Aclaris Therapeutics, Inc.*, 2021 WL 5847420, at *7 (S.D.N.Y. Dec. 9, 2021) ("The $2.65 million gross recovery for the settlement class returns approximately 14% of Lead Plaintiff's estimated damages. Given the risks presented by the case, the Court views this as a favorable recovery for the class."); *Grice v. Pepsi Bevs*. Co., 363 F. Supp. 3d 401, 408-09 (S.D.N.Y. 2019) ("[T]he class members are receiving only approximately 5% of their maximum potential recovery.  But considering the factual and legal hurdles that the class would have had to overcome before securing a favorable judgment, the current settlement represents a good result for the class members.").

Here, the relief which the Settlement Agreement provides is within the range of reasonableness, especially considering the best possible recovery and all the attendant risks of litigation.  The gravamen of the Litigation is that Defendant is deceiving consumers by failing to

disclose that the Class Products may contain Pseudomonas aeruginosa. The cash compensation to which eligible Settlement Class Members will be entitled is significant relative to Plaintiffs' best day at trial. The substantial relief afforded strongly supports preliminary approval.

### B. The Rule 23(e)(2) Factors

#### 1. Class Counsel and Plaintiffs Adequately Represented the Class

"Determination of adequacy typically entails inquiry as to whether: (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 330 F.R.D. 11, 30 (E.D.N.Y. 2019). As discussed below, Plaintiffs and Class Counsel have adequately represented the Class. Argument IV.A.4, *infra*.

#### 2. The Settlement Was Negotiated at Arm's-Length

"If a class settlement is reached through arm's-length negotiations between experienced, capable counsel knowledgeable in complex class litigation, the Settlement will enjoy a presumption of fairness." *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 693 (S.D.N.Y. 2019). "Further, a mediator's involvement in settlement negotiations can help demonstrate their fairness." *Id*. Here, both Class Counsel and counsel for Defendant are experienced in class action litigation. Sultzer Decl. ¶¶ 25-26, Exs. 3-7. Moreover, the parties participated in a mediation before Judge Gold and engaged in protracted settlement discussions. *Id*. ¶¶ 18-19.

#### 3. The Settlement Provides Adequate Relief to The Class

Whether relief is adequate considers "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C)(i-iv).

As to "the costs, risks, and delay of trial and appeal," this factor "subsumes several *Grinnell* factors . . .including: (i) the complexity, expense and likely duration of the litigation; (ii) the risks of establishing liability; (iii) the risks of establishing damages; and (iv) the risks of maintaining the class through the trial." *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 330 F.R.D. at 36. The Settlement meets each of these *Grinnell* factors. Argument I.A.

As to "the effectiveness of any proposed method of distributing relief to the class," the Notice Plan outlined below was proposed by experienced and competent counsel and ensures "the equitable and timely distribution of a settlement fund without burdening the process in a way that will unduly waste the fund." *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d at 695; *see also* Argument III.

As to "the terms of any proposed award of attorney's fees," Plaintiffs' Counsel plans to apply for attorneys' fees in the amount of one-third of the Settlement Fund. Sultzer Decl. ¶ 17. Courts in this Circuit routinely approve fee requests for one-third of a common fund. *See*, *e.g.*, *Hayes v. Harmony Gold Min. Co.*, 2011 WL 6019219, at *1 (S.D.N.Y. Dec. 2, 2011), *aff'd*, 509 F. App'x 21, 23-24 (2d Cir. 2013; *Clark v. Ecolab, Inc.*, 2010 WL 1948198, at *8-9 (S.D.N.Y. May 11, 2010). As courts in this Circuit have noted, fee requests for one-third of common funds represent what "reasonable, paying client[s] . . . typically pay . . . of their recoveries under private retainer agreements." *Reyes v. Altamarea Grp.*, 2011 WL 4599822, at *8 (S.D.N.Y. Aug. 16, 2011). This Court has approved fees of one-third of the settlement fund in cases that have settled in a similar procedural posture. *See Patora v. Tarte, Inc.,* Case No. 18-cv-11760-KMK (S.D.N.Y.) (awarding a third of settlement fund for attorneys' fees and costs in a consumer fraud case); *Rapoport-Hecht v. Seventh Generation*, Case No. 7:14-cv-09087 (S.D.N.Y.) (same); Mayhew, v. KAS Direct LLC, Case No. 16-cv-6981 (VB) (same); *Swetz v. GSK* Consumer Health, Inc., 7:20-cv-04731-NSR (S.D.N.Y) (same). In addition, courts have recently approved settlements and

attorneys' fees requests in similar product contamination cases. *See Bangoura v. Beiersdorf, Inc. and Bayer Healthcare, Inc*., 1:22-cv-00291-BMC (E.D.N.Y.) (approving attorney's fee award of 32% of the common fund in a benzene contamination case).

As to "any agreement required to be identified by Rule 23(e)(3)" or "any agreement made in connection with the proposal," *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3pd at 696, no such agreement exists in this case other than the Settlement.

### 4.    The Settlement Treats All Class Members Equally

This Rule 23(e)(2) factor discusses "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 330 F.R.D. at 47. The Settlement distributes relief on a *pro rata* basis, which has been found by courts in this Circuit to be equitable. *Id.*; *see also Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 667 (S.D.N.Y. 2015) (a *pro rata* distribution plan "appears to treat the class members equitably").

## II.    THE COURT SHOULD PRELIMINARILY CERTIFY THE SETTLEMENT CLASS

As Plaintiffs set forth below, and although Defendant reserves all of its arguments to the contrary should this Settlement not be approved, the proposed Settlement Class satisfies all of the requirements of Rule 23(a) and Rule 23(b)(3).

### A.    The Settlement Class Meets All Prerequisites of Rule 23(a) Of The Federal Rules Of Civil Procedure

The Settlement Class meets each prerequisite of Rule 23(a) which include: (i) numerosity; (ii) commonality; (iii) typicality; and (iv) adequate representation. Fed. R. Civ. P. 23(a).

21

### 1.    *Numerosity*

Under Rule 23(a)(1), plaintiffs must show that the proposed class is "so numerous that joinder of all [its] members is impracticable." Fed. R. Civ. P. 23(a)(1).  The Second Circuit has found numerosity met where a proposed class is "obviously numerous." *Marisol A. ex rel. Forbes v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997).  Here, there is no dispute that millions of consumers nationwide purchased the Class Products during the Class Period.  Numerosity is easily satisfied. *See id.*

### 2.    *Commonality*

Under Fed. R. Civ. P. 23(a)(2), plaintiffs must show that "questions of law or fact common to the [proposed] class" exist.  Commonality requires that the proposed class members' claims all centrally "depend upon a common contention," which "must be of such a nature that it is capable of class wide resolution," meaning that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  "[F]or purposes of Rule 23(a)(2) even a single common question will do." *Id.* at 359.  Here, common questions include, but are not limited to, whether Defendant's failure to disclose that the Class Products contained *Pseudomonas aeruginosa* was likely to deceive reasonable consumers.  Resolving this common question would require evaluating the question's merits under a single objective standard, i.e., the "reasonable consumer" test. *Hart v. BHH, LLC*, 2017 WL 2912519, at *6 (S.D.N.Y. July 7, 2017) (commonality met where "the putative class members relied on the same alleged misrepresentations of fact regarding the efficacy of the pest repeller, and suffered the same economic harm.").  Thus, commonality is satisfied.

### 3.    *Typicality*

Fed. R. Civ. P. 23(a)(3) requires that the proposed class representatives' claims "are typical of the [class's] claims."  Plaintiffs must show that "the same unlawful conduct was directed at or

affected both the named plaintiff and the class sought to be represented." *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993). "[D]ifferences in the degree of harm suffered, or even in the ability to prove damages, do not vitiate the typicality of a representative's claims." *In re Nissan Radiator/Transmission Cooler Litig.*, 2013 WL 4080946, at *19 (S.D.N.Y. May 30, 2013). Here, typicality is met because the same allegedly unlawful conduct by Defendant was directed at, or affected, Plaintiffs and Settlement Class Members. *Robidoux*, 987 F.2d at 936-37.

        *4.    Adequacy*

Under Fed. R. Civ. P. 23(a)(4), Plaintiffs must show that the proposed class representatives will "fairly and adequately protect the interests of the class." Plaintiffs must demonstrate that: (1) the class representatives do not have conflicting interests with other class members; and (2) class counsel is "qualified, experienced and generally able to conduct the litigation." *Marisol A.*, 126 F.3d at 378.

To satisfy the first requirement, Plaintiffs must show that "the members of the class possess the same interests" and that "no fundamental conflicts exist" between the class representatives and class members. *Charron*, 731 F.3d at 249. Here, Plaintiffs possesses the same interests as the proposed Settlement Class Members because Plaintiffs and the Settlement Class Members were all allegedly injured in the same manner based on the same allegedly misleading conduct concerning the Class Products.

With respect to the second requirement, Class Counsel are qualified, experienced, and generally able to conduct the Litigation. Class Counsel have invested considerable time and resources into prosecuting the Litigation and possess a long and proven track record of successfully prosecuting class actions, including false advertising cases, and numerous appointments as class counsel. *See* Sultzer Decl. ¶¶ 25-26 , Exs. 3-7.

**B.**     **The Settlement Class Meets the Requirements Of Rule 23(b)**

"In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must

show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem Prods. v. Windsor*,

521 U.S. 591, 614 (1997).  Plaintiffs seek certification under Rule 23(b)(3), which requires that

"questions of law or fact common to class members predominate over any questions affecting only

individual members" and "a class action is superior to other available methods for fairly and

efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

*1.     Common Legal and Factual Questions Predominate In This Action*

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently

cohesive to warrant adjudication by representation."  *Amchem Prods.*, 521 U.S. at 623.  The

Second Circuit has held that "to meet the predominance requirement . . . a plaintiff must establish

that the issues in the class action that are subject to generalized proof, and thus applicable to the

class as a whole, predominate over those issues that are subject only to individualized proof."

*Augustin v. Jablonsky (In re Nassau County Strip Search Cases)*, 461 F.3d 219, 227-28 (2d Cir.

2006).  In the context of a request for settlement-only class certification, concerns about whether

individual issues "would present intractable management problems" at trial drop out because "the

proposal is that there be no trial."  *Id.* at 620.  As a result, "the predominance inquiry will

sometimes be easier to satisfy in the settlement context."  *Tart v. Lions Gate Ent. Corp.*, 2015 WL

5945846, at *4 (S.D.N.Y, Oct. 13, 2015).  Consumer fraud cases readily satisfy the predominance

inquiry.  *See Amchem Prods.*, 521 U.S. at 625.

Here, for settlement purposes, the central common questions predominate over any

questions that may affect individual Settlement Class Members.  The central common questions

include whether Defendant's failure to disclose the presence of Pseudomonas aeruginosa in the

Class Products was likely to deceive reasonable consumers and whether the omissions were

material.  These issues are subject to "generalized proof" and "outweigh those issues that are subject to individualized proof."  *In re Nassau Cty. Strip Search Cases*, 461 F.3d at 227–28.

       2.     *A Class Action Is the Superior Means To Adjudicate Plaintiffs' Claims*

Fed. R. Civ. P. 23(b)(3) also requires that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Here, the class action mechanism is superior to individual actions for numerous reasons.  *First*, "[t]he potential class members are both significant in number and geographically dispersed" and "[t]he interest of the class as a whole in litigating the many common questions substantially outweighs any interest by individual members in bringing and prosecuting separate actions."  *Meredith Corp.*, 87 F. Supp. 3d at 661.  *Second*, a class action is superior because the "small recoveries" at stake here likely "do not provide the incentive for any individual to bring a solo action prosecuting his or her rights."  *Tart*, 2015 WL 5945846, at *5.  *Finally*, a class action will conserve judicial resources because "rather than individually settling [thousands of] lawsuits, the proposed Settlement allows for the named Plaintiff[s], class members, and Defendant to resolve all claims . . . at once."  *Id*.  For all the foregoing reasons, a class action is superior to individual suits.

## III.    THE COURT SHOULD APPROVE THE PROPOSED NOTICE PLAN

"Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise' regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)."  MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.312 (2004).  "The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness."  *Visa*, 396 F.3d at 113.  Courts "must direct to class members the best notice that is practicable under the circumstances."  *Vargas v. Capital One Fin. Advisors*, 559 F. App'x 22, 26 (2d Cir. 2014).

Here, the robust proposed Notice Plan meets the requirements of due process and the Federal Rules of Civil Procedure.  The proposed methods Plaintiffs identified above for providing notice to the Settlement Class Members are reasonable, designed to reach 75.2% of the Settlement Class, and utilize the best practicable and economically efficient means to notify consumers of the proposed Settlement.  *See* Ex. 2, ¶ 13; JUDGES' CLASS ACTION NOTICE AND CLAIMS PROCESS CHECKLIST AND PLAIN LANGUAGE GUIDE, at 3 (2010) ("It is reasonable to reach between 70-95%.").  Direct notice through email will go to consumers who provided their email address to Defendant as part of the recall. *See* Ex. 2, ¶¶ 15-18.  A digital advertising campaign targeting Settlement Class Members will be used to drive them to the Settlement Website.  *Id.* ¶¶ 19-32.

Substantively, Rule 23(c)(2)(B) requires, and the Notice of Settlement provides, information, written in easy-to-understand plain language, regarding: "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who request exclusions; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B).  "There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the settlement notice must 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'"  *Visa*, 396 F.3d at 114. The Notices of Settlement define the Settlement Class; explain all Settlement Class Members' rights, the scope and impact of Released Claims, and the applicable deadlines for submitting claims, objecting, and opting out; and they describe in detail the monetary relief of the Settlement, including the procedures for allocating and distributing the Settlement Fund among the Settlement Class Members, Plaintiffs, Class Counsel, and the Settlement Administrator.  Ex. [Notice Plan];

*see also* Exs. 1 & 2 to the Settlement Agreement.  They also plainly indicate the time and place of the Final Approval, and explain the methods for objecting to, or opting out of, the settlement.  *Id.* They detail the provisions for payment of Attorneys' Fees, Costs and Service Awards, and they provide contact information for Class Counsel.  *Id.*

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court: (1) certify the Settlement Class and appoint Plaintiffs in the *Swetz, Charles,* and *Kossel* Actions as the class representatives and their counsel as Class Counsel; (2) preliminarily approve the Settlement Agreement; (3) approve the Notice Plan; and (4) set a date and time for the Final Approval Hearing.

Dated: July 28, 2023                              Respectfully submitted,

By: */s/ Jason P. Sultzer*
        Jason P. Sultzer

**THE SULTZER LAW GROUP P.C.**
Jason P. Sultzer, Esq.
Joseph Lipari, Esq.
Jeremy Francis, Esq.
85 Civic Center Plaza, Suite 200
Poughkeepsie, NY 12061
Tel: (845) 483-7100
Fax: (888) 749-7747
E-Mail: sultzerj@thesultzerlawgroup.com
        liparij@thesultzerlawgroup.com
        francisj@thesultzerlawgroup.com

**LEVIN SEDRAN & BERMAN**
Charles E. Schaffer, Esq.
David C. Magagna Jr., Esq.
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel: 215-592-1500
cschaffer@lfsblaw.com
dmagagna@lfsblaw.com

**LEEDS BROWN LAW, P.C.**
Jeffrey K. Brown, Esq.
1 Old Country Rd., Suite 347

Carle Place, NY 11514
Tel: (516) 873-9550
jbrown@leedsbrownlaw.com

**SQUITIERI & FEARON, LLP**
Stephen J. Fearon, Jr.
Paul Sweeny
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 421-6492
Facsimile: (212) 421-6553
Email: Stephen@sfclasslaw.com
Email: Paul@sfclasslaw.com

*Attorneys for Plaintiffs and the
Settlement Class*

28