**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BRYAN SWETZ on behalf of himself and all others similarly situated, | Case No. 7:22-cv-9374-PMH |
| Plaintiff, | Hon. Philip M. Halpern |
| v. | |
| THE CLOROX COMPANY, | |
| Defendant. | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Dated: May 1, 2024

THE SULTZER LAW GROUP P.C.
Jason P. Sultzer
Jeremy Francis
85 Civic Center Plaza, Suite 200
Poughkeepsie, NY 12061
Tel: (845) 483-7100
sultzerj@thesultzerlawgroup.com
francisj@thesultzerlawgroup.com

LEVIN SEDRAN & BERMAN, LLP
Charles E. Schaffer
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel: 215-592-1500
cschaffer@lfsblaw.com

LEEDS BROWN LAW, P.C.
Jeffrey K. Brown, Esq.
1 Old Country Rd., Suite 347
Carle Place, NY 11514
Tel: (516) 873-9550
jbrown@leedsbrownlaw.com

SQUITIERI & FEARON, LLP
Stephen J. Fearon, Jr.
Paul V. Sweeny
305 Broadway, 7th Floor
New York, New York 10007
Tel : (212) 421-6492
stephen@sfclasslaw.com
Paul@sfclasslaw.com

*Attorneys for Plaintiffs and the Settlement Class*

**TABLE OF CONTENTS**

Table of Contents…………………………………………………………………………..i-ii

Table of Authorities…………………………………………………………………..iii-viii

   I.      INTRODUCTION………………………………………………………………1

   II.     FACTUAL AND PROCEDURAL BACKGROUND………………………………...2

         A.  Factual Background……………………………………………………………2

         B.  Procedural History and Settlement Negotiations…………………………………3

   III.    KEY TERMS OF THE SETTLEMENT………………………………………....6

         A.  The Settlement Class……………………………………………………………6

         B.  Relief for Settlement Class Members…………………………………………..7

         C.  The Release………………………………………………………………7

         D.  Notice and Other Administration Expenses………………………………………8

         E.  Incentive Award, Attorneys' Fees, Costs, and Expenses…………………………..8

   IV.   CLASS CERTIFICATION FOR SETTLEMENT PURPOSES
         IS APPROPRIATE………………………………………………………………8

         A.  Numerosity………………………………………………………………...9

         B.  Commonality………………………………………………………………10

         C.  Typicality………………………………………………………………...10

         D.  Adequacy………………………………………………………………...11

         E.  The Proposed Settlement Class Meets the Requirements of
            Rule 23(b)(3)………………………………………………………………12

            1.  *Common Questions Predominate*…………………………………………12

            2.  *A Class Action Is A Superior Mechanism For Adjudication*…………………13

V.      THE NOTICE PLAN COMPORTS WITH DUE PROCESS…………………......14

VI.     THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND
        ADEQUATE AND SHOULD BE FINALLY APPROVED BY
        THE COURT…………………………………………………………………....16

        A.  The *Grinnell* Factors…………………………………………………..17

            1.  *Litigation Through Trial Would be Complex, Costly, And Long*…………….17

            2.  *The Reaction of The Class Is Overwhelmingly Positive*……………………..19

            3.  *The Stage of The Proceedings and The Amount of Discovery
                Completed*…………………………………………………………………19

            4.  *The Risks of Establishing Liability and Damages*…………………….…..21

            5.  *The Risk of Maintaining Class Action Status Through Trial*…………….....22

            6.  *The Ability of Defendant To Withstand Greater Judgment*…………….…..22

            7.  *The Range of Reasonableness of The Settlement in Light of The Best
                Possible Recovery And in Light of All The Attendant Risks
                of Litigation*…………………………………………………………......22

        B.  The Rule 23(e)(2) Factors……………………………………….…..24

            1.  *Class Counsel and Plaintiffs Adequately Represented The Class*…………...24

            2.  *The Settlement Was Negotiated at Arm's Length*…………………………..24

            3.  *The Settlement Provides Adequate Relief to The Class*……………….…..25

            4.  *The Settlement Treats All Class Members Equally*………………………..26

VII.    CONCLUSION……………………………………………………………27

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litigs.*,
   271 F. App'x 41 (2d Cir. 2008) ................................................................15

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)................................................................12, 13

*Asare v. Change Group N.Y., Inc.*,
   2013 U.S. Dist. LEXIS 165935 (S.D.N.Y Nov. 15, 2013)....................................20

*Augustin v. Jablonsky* (In re Nassau County Strip Search Cases),
   461 F.3d 219, 227-28 (2d Cir. 2006)……………………………………………………..13

*In re Austrian & German Bank Holocaust Litig.*,
   80 F. Supp. 2d 164 (S.D.N.Y. 2000)................................................................17, 21

*Bangoura v. Beiersdorf, Inc.*,
   Case No. 1:22-cv-00291-BMC (E.D.N.Y) ................................................................2, 5, 20

*Bryan Swetz v. The Clorox Company*,
   7:22-cv-09374-PMH (S.D.N.Y.) ................................................................1

*Castagna v. Madison Square Garden, L.P.*,
   U.S. Dist. LEXIS 64218, 2011 WL 2208614 (S.D.N.Y. Jun. 7, 2011) ................................20

*Catalano v. Lyons Magnus, LLC*,
   Case No. 7:22-cv-06867 (S.D.N.Y.) (Karas, J.) ................................................................2, 11, 20

*Charles v. Clorox Co.*,
   Case No. 4:22-cv-6855-HSG ................................................................3

*Charron v. Wiener*,
   731 F.3d 241 (2d Cir. 2013)................................................................11

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974)................................................................ *passim*

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001)……………………………………………………...17

*D.S. v. New York City Dep't of Educ.*,
   255 F.R.D. 59 (E.D.N.Y. 2008) ................................................................19

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974) ............................................................................................................14

*Ferrick v. Spotify USA Inc.*,
    2018 WL 2324076 (S.D.N.Y. May 22, 2018) ...........................................................25

*General Tel. Co. v. Falcon*,
    457 U.S. 147 (1982) ............................................................................................................11

*Goldstein v. Henkel Corporation et al.*,
    Case No. 3:22-cv-00164-AWT (D. Conn.) (Thompson, J.) ....................................2

*Gordon v. Vanda Pharmaceuticals Inc.*,
    2022 WL 4296092 (E.D.N.Y. Sept. 15, 2022) ..........................................................27

*Green v. Wolf Corp.*,
    406 F.2d 291 (2d Cir. 1968)............................................................................................13

*In re GSE Bonds Antitrust Litig.*,
    414 F. Supp. 3d 686 (S.D.N.Y. 2019).........................................................................24

*In re GSE Bonds Antitrust Litig.*,
    414 F. Supp. 3pd ................................................................................................................26

*Hart v. BHH, LLC*,
    2017 WL 2912519 (S.D.N.Y. July 7, 2017) .............................................................10

*Hernandez v. Merrill Lynch & Co.*,
    2013 U.S. Dist. LEXIS 42681 (S.D.N.Y. Mar. 21, 2013) ....................................20

*Hernandez v. Uzzal Pizzeria, Inc.*,
    2022 WL 1032522 (S.D.N.Y. Apr. 6, 2022)..............................................................26

*Johnson v. Rausch, Sturm, Israel, Enerson & Hornik, LLP*,
    333 F.R.D. 314 (S.D.N.Y. 2019) .................................................................................16

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*,
    2020 WL 7389330 (S.D.N.Y. Dec. 16, 2020) ..........................................................27

*Kossel v. Clorox Co.*,
    Case No. 7:22-cv-10450 .....................................................................................................4

*Marisol A. v. Giuliani*,
    126 F.3d 372 (2d Cir. 1997)......................................................................................9, 11

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
    2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009). Notice............................................14

*Massiah v. MetroPlus Health Plan, Inc.*,
2012 WL 5874655 (E.D.N.Y. 2012) ................................................................ 19

*Masters v. Wilhelmina Model Agency, Inc.*,
473 F.3d 423 (2d Cir. 2007) ..................................................................... 23, 26

*Mayhew, v. KAS Direct LLC*,
Case No. 16-cv-6981 (Briccetti, J) .......................................................... 11, 20

*McBean v. City of New York*,
228 F.R.D. 487 (S.D.N.Y. 2005) .................................................................. 12

*Meredith Corp. v. SESAC, LLC*,
87 F. Supp. 3d 650 (S.D.N.Y. 2015) .................................................. 13, 14, 27

*In re MetLife Demutualization Litig.*,
689 F. Supp. 2d 297 (E.D.N.Y. 2010) ............................................................ 18

*Michael Charles v. The Clorox Company*,
4:22-cv-06855-HSG (N.D. Cal.) ...................................................................... 1

*Moses v. N.Y. Times Co.*,
79 F.4th 235 (2d Cir. 2023) ...................................................................... 24, 26

*In re Nassau Cty. Strip Search Cases*,
461 F.3d at 227–28 ................................................................................... 12, 13

*Newman v. Stein*,
464 F.2d 689 (2d Cir. 1972) ......................................................................... 23

*In re Nissan Radiator/Transmission Cooler Litig.*,
2013 WL 4080946 (S.D.N.Y. May 30, 2013) (Briccetti, J.) .................... 10, 17, 19

*Olivia Kossel, et. al. v. The Clorox Company*,
7:22-cv-10450-PMH (S.D.N.Y.) ................................................................... 1, 4

*In re PaineWebber*,
171 F.R.D. 104 (S.D.N.Y. 1997) ................................................................... 21

*Patellos v. Hello Products, LLC*,
2022 WL 2159566 (S.D.N.Y. June 15, 2022) ................................................. 27

*Patora v. Colgate-Palmolive Co.*,
Case No. 7:23-cv-01118-VB (S.D.N.Y.) (Briccetti, J.) .............................. 2, 11, 20

*Patora v. Tarte, Inc.*,
Case No. 18-cv-11760-KMK (S.D.N.Y.) (Karas, J) .................................... 11, 20

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   986 F. Supp. 2d 207 (E.D.N.Y. 2013) ...................................................................19

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
   2019 WL 6875472 (E.D.N.Y. Dec. 16, 2019) .......................................................17

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
   330 F.R.D. ...............................................................................................25, 26, 27

*In re Petrobas Sec.*,
   862 F.3d 250 (2d Cir. 2017) .................................................................................13

*In re Prudential Insur. Sales Practices Litig.*,
   962 F. Supp. 450 (D.N.J. 1997) ...........................................................................13

*Rapoport-Hecht v. Seventh Generation*,
   Case No. 7:14-cv-09087 (S.D.N.Y.) (Karas, J.) .............................................11, 20

*Reyes v. Summit Health Mgmt.*,
   LLC, 2024 U.S. Dist. LEXIS 21061 (S.D.N.Y. Feb. 25, 2024) .............................25

*Robidoux v. Celani*,
   987 F.2d 931 (2d Cir. 1993) .................................................................................10

*Rossini v. Ogilvy & Mather, Inc.*,
   798 F.2d 590 (2d Cir. 1986) .................................................................................12

*Shaya Eidelman v. Sun Prods. Corp.*,
   2022 U.S. App. LEXIS 15480 (2d Cir. 2022) ......................................................22

*In re Sinus Buster Prods. Consumer Litig.*,
   2014 WL 5819921 (E.D.N.Y. Nov. 10, 2014).......................................................22

*Swetz v. Clorox Co.*,
   Case No. 7:22-cv-9374-PMH ................................................................................3

*Swetz v. GSK Consumer Health, Inc.*,
   7:20-cv-04731-NSR (S.D.N.Y) (Roman, J)....................................................11, 20

*TBK Partners, Ltd. v. Western Union Corp.*,
   517 F. Supp. 380 (S.D.N.Y. 1981), aff'd, 675 F.2d 456 (2d Cir. 1982).................17

*Trinidad v. Pret a Manger (UDS) Ltd.*,
   2014 WL 4670870 (S.D.N.Y. Sept. 19, 2014).......................................................26

*Viafara v. MCIZ Corp.*,
   2014 WL 1777438 (S.D.N.Y. Apr. 30, 2014).................................................22, 23

*In re Visa Check/MasterMoney Antitrust Litig.*,
    280 F.3d 124 (2d Cir. 2001)............................................................................13

*In re Vitamin C*,
    2012 WL 5289514 ...........................................................................................21

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011).........................................................................................9

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005).......................................................................14, 16

*Weigner v. City of N.Y.*,
    852 F.2d 646 (2d Cir. 1988)............................................................................15

*Willix v. Healthfirst, Inc.*,
    2011 WL 7584862 (E.D.N.Y. Feb. 18, 2011)..................................................21

*Zivkovic v. Laura Christy LLC*,
    329 F.R.D. 61 (S.D.N.Y. 2018) .........................................................................9

**Statutes**

CAFA ......................................................................................................7, 8, 15

Fed. R. Civ. P. 23 .................................................................................... *passim*

Fed. R. Civ. P. 23(a)(4) ..................................................................................10

Fed. R. Civ. P. 23(c)(2)(B) ......................................................................14, 18

Rule 23(a) ...............................................................................................8, 10, 12

Rule 23(a)(1) ....................................................................................................9

Rule 23(a)(2) .................................................................................................9, 10

Rule 23(b)(3) ....................................................................................................9

Rule 23(b) ........................................................................................................8

Rule 23(b)(3)...........................................................................................8, 9, 12, 13

Rule 23(e) ........................................................................................................16

Rule 23(e)(2) ........................................................................................16, 17, 24, 26

Rule 23(e)(2)(C)(i-iv) ......................................................................................25

Rule 23(e)(3)................................................................................................................17, 25, 26

Rule 23(g) ...............................................................................................................................11, 12

Plaintiffs Bryan Swetz, Michael Charles, Olivia Kossel, Tina Donohue, and Alyce Lacey (collectively "Plaintiffs")[1], respectfully submit this memorandum of law in support of Plaintiffs' Motion for Final Approval of Class Action Settlement (hereinafter the "Motion").

## I.    <u>INTRODUCTION</u>

On November 15, 2023, this Court preliminarily approved the class action Settlement[2] between Plaintiffs and Defendant The Clorox Company ("Clorox" or "Defendant") and directed that notice be sent to the Settlement Class. ECF No. 35. The Class Administrator, Angeion Group ("Angeion"), has implemented the Court-approved notice plan and direct notice has reached an estimated 76.85% of the Settlement Class.[3]  The reaction from the Settlement Class has been overwhelmingly positive. Specifically, of the 287,790 Settlement Class Members that made claims, zero objected, and only twenty-one (21) requested to be excluded. The Settlement is an excellent result for the Settlement Class and the Court should grant final approval.

The Settlement's strength speaks for itself: The Settlement Agreement provides that Defendant will establish a Settlement Fund in the amount of $5.65 million, with no right of reversion, which will be exhausted to pay all Approved Claims. Notably, this Settlement falls squarely within, or even above the range established by previous, similar settlements concerning

---

[1]    Although there is only one plaintiff in this action (Plaintiff Swetz), the Settlement Agreement (ECF No. 33, Exh. 1) resolves the economic claims of three separate actions involving similar claims: *Bryan Swetz v. The Clorox Company*, 7:22-cv-09374-PMH (S.D.N.Y.); *Michael Charles v. The Clorox Company*, 4:22-cv-06855-HSG (N.D. Cal.); and *Olivia Kossel, et. al. v. The Clorox Company*, 7:22-cv-10450-PMH (S.D.N.Y.). The plaintiffs in those three actions are parties to the Settlement Agreement and join together to make this motion. As a result, this brief refers to "Plaintiffs" plural, instead of simply referring to Mr. Swetz, the sole Plaintiff in this case.

[2]    Unless otherwise indicated, capitalized terms shall have the same meaning as they do in the Settlement Agreement. References to "§ __" are to sections in the Settlement Agreement, submitted as Exhibit 1 to the Declaration of Jason Sultzer in Support of Plaintiffs' Motion for Final Approval (the "Sultzer Decl.") and all Settlement Agreement Exhibits are referred to as "Ex. [Letter]."

[3]    The Federal Judicial Center states that a publication notice plan that reaches 70% of class members is one that reaches a "high percentage" and is within the "norm." Barbara J. Rothstein & Thomas E. Willging, Federal Judicial Center, "Managing Class Action Litigation: A Pocket Guide or Judges," at 27 (3d Ed. 2010).

the contamination of consumer products. *See, e.g.*, *Bangoura v. Beiersdorf, Inc.*, Case No. 1:22-cv-00291-BMC (E.D.N.Y) (Cogan. J.) ($2.3MM common fund); *Catalano v. Lyons Magnus, LLC*, Case No. 7:22-cv-06867 (S.D.N.Y.) (Karas, J.); ($3.5MM common fund); *Patora v. Colgate-Palmolive Co.*, Case No. 7:23-cv-01118-VB (S.D.N.Y.) (Briccetti, J.) ($1.925 million common fund); *Goldstein v. Henkel Corporation et al.*, Case No. 3:22-cv-00164-AWT (D. Conn.) (Thompson, J.) ($1.95MM common fund).

Moreover, Settlement Class Members who submitted Approved Claims will receive a substantial recovery as a result of the Settlement. Of the 287,790 Approved Claims made because of the Notice Plan, 581 were submitted with Proof of Purchase and 287,209 Approved Claims were submitted without Proof of Purchase. *See* Declaration of Steven Weisbrot, ¶ 19. The average recovery for claimants who submitted proof of purchase is estimated to be $44.65, while the average estimated recovery for those that submitted an Approved Claim without proof of purchase is $10.36 *Id*. at ¶ 23. This is compensation that was not available through Defendant's recall of the Products at issue in the litigation.[4]

For these reasons, and as explained further below, the Settlement is fair, reasonable, and adequate, and warrants this Court's certification of the Settlement Class and final approval of the Settlement.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Factual Background

Plaintiffs purchased certain Clorox Pine-sol cleaning products (the "Class Products").[5] In the Litigation, Plaintiffs asserted that the Class Products were contaminated, or at risk of being

---

[4] Until recently the recall required proof of purchase for a refund. Pursuant to the recall, Defendant has provided approximately $65,000 in refunds to approximately 71,000 claimants.

[5] The "Class Products" are defined in § 2.12 of the Settlement Agreement. The Settlement excludes any alleged personal injury claims.

contaminated, with dangerous bacteria, called *Pseudomonas aeruginosa*. § 1.C.-G. Plaintiffs seek to recover economic damages individually and on behalf of a nationwide class of purchasers of Class Products, which Plaintiffs allege Defendant manufactured and distributed and were deceptively and misleadingly marketed, advertised, labeled, and sold.

Defendant denies liability. Nevertheless, Defendant has agreed to enter into this Settlement Agreement to avoid further expense, inconvenience, and interference with its ongoing business operations, and to dispose of burdensome litigation.  § 1.H-I.

### B.    Procedural History and Settlement Negotiations

On October 25, 2022, Clorox announced that laboratory testing had identified *Pseudomonas aeruginosa* bacteria in certain of its Pine-Sol products and that Clorox was initiating a recall of those products in coordination with the U.S. Consumer Product Safety Commission ("CPSC").  As part of the recall, Clorox offered refunds to purchasing consumers.

 On November 1, 2022, Plaintiff Bryan Swetz filed this action, styled *Swetz v. Clorox Co.*, Case No. 7:22-cv-9374-PMH (the "*Swetz* Action"), on behalf of a putative nationwide class of consumers who purchased the Class Products, as well as a putative New York subclass of consumers who purchased the Class Products, asserting claims for (1) violations of N.Y. G.B.L. § 349, (2) violations of N.Y. G.B.L. § 350, and (3) breach of express warranty.

Two days later, Plaintiff Michael Charles filed a putative class action against Clorox in the U.S. District Court for the Northern District of California styled *Charles v. Clorox Co.*, Case No. 4:22-cv-6855-HSG (the "*Charles* Action"), on behalf of a putative nationwide class of consumers who purchased the Class Products.

Subsequently, on December 9, 2022, Plaintiff Olivia Kossel filed a putative class action

against Clorox in the Southern District of New York styled *Kossel v. Clorox Co.*, Case No. 7:22-cv-10450 (the "*Kossel* Action").  On February 16, 2023, Plaintiffs Olivia Kossel, Tina Donohue, Alyce Lacey, and Alexis McChorn filed an amended class action complaint in the *Kossel* Action, and then on March 17, 2023, plaintiffs in the *Kossel* Action filed a second amended complaint on behalf of a putative "Economic Injury Class" of all United States residents who purchased the Class Products, as well as a putative "Physical Injury Class" of all United States residents who allegedly suffered physical injuries as a result of using the Class Products.[6]  Certain Plaintiffs in the *Kossel* Action filed a third amended complaint on November 21, 2023.

During the Litigation, Class Counsel worked to thoroughly analyze the legal landscape, including conducting research into the various state consumer protection laws and available remedies, and evaluating matters relating to class certification, in order to fully evaluate the risks and benefits to a potential early resolution.  Sultzer Decl. ¶ 17.  Class Counsel also conducted a detailed and extensive analysis of the claims alleged in the Complaints, including the labeling claims for the Class Products, the relevant regulations concerning labeling and advertising disclosure requirements for these types of cleaning products, regulatory and scientific guidelines regarding the presence of *Pseudomonas aeruginosa* in consumer products, and the scientific research concerning the dangers of *Pseudomonas aeruginosa*.  Sultzer Decl. ¶ 20.  In addition, Class Counsel hired an independent laboratory to conduct their own testing on certain Class Products for the presence of *Pseudomonas aeruginosa*.  *Id.* ¶ 21.  Moreover, Class Counsel analyzed the chain of distribution of the Class Products and the pricing per unit to help support

---

[6]     The physical injury claims asserted by plaintiffs in the *Kossel* Action are the subject of separate litigation between Clorox and the personal injury plaintiffs and will be resolved separately from the resolution of the economic claims in the Settlement Agreement.  *See Kossel* Action ECF No. 35 (Third Amended Complaint).

and determine Plaintiffs' damages model. *Id*. ¶ 27. Class Counsel also researched the cleaning products marketplace to understand the potential scope of this matter and marketing and sales trends, practices, and patterns for the cleaning products industry, as well as issues related to any future contamination. *Id.* ¶ 28.

Based on the Parties' exchange of discovery to date and their respective investigations into the claims and defenses asserted in the actions, the parties agreed to engage in settlement negotiations with former Chief Judge Magistrate Steven Gold of the Eastern District of New York, currently at JAMS, on June 7, 2023.[7] *Id.* ¶ 18. In connection with the mediation, Class Counsel requested and received significant mediation discovery to evaluate the claims and to position themselves to negotiate a settlement that would be fair and reasonable on behalf of the Settlement Class. Defendant produced documents and information regarding the sales data of Class Products throughout the Class Period, details about how and why the Clorox products potentially became contaminated with *Pseudomonas aeruginosa*, and the control procedures put in place to deter future, similar incidents, and information pertaining to the Recall and claims process. *Id.* ¶ 19. Plaintiffs also conducted their own due diligence regarding the testing protocols and procedures that Defendant put in place after discovering the contamination. This information was critical to Plaintiffs' determination that the cause of the contamination has been contained and procedures were put in place to prevent future contamination.

The settlement negotiations were conducted at arm's-length over a period of several weeks. *Id*. ¶ 32. With Judge Gold's assistance, the Parties reached an agreement in principle at the

---

[7] Judge Gold's experience as a mediator was invaluable as he is one of the most highly respected mediators in the country. *See* Tr. of Final Approval Hearing, at 9:11-20, *Bangoura v. Beiersdorf, Inc. and Bayer Healthcare, LLC*, Case No. 1:22-cv-00291-BMC (S.D.N.Y. Jan. 5, 2023) (Judge Cogan stating that "I think that the fact that Judge Gold was involved is, itself, an unusual guarantee of fairness here because he is very adept at these things.").

mediation session. However, the Parties continued to pursue settlement discussions for several weeks, working out the details of the settlement and culminating in the Settlement Agreement,[8] which is the product of hard-fought, arm's-length negotiations. *Id*. ¶ 34.

On July 28, 2023, Plaintiffs' Counsel filed their Motion for Preliminary Approval of Class Action Settlement, along with a supporting declarations and memorandum of law. (ECF Nos. 31-33). On November 15, 2023, this Court entered its Order Granting Preliminary Approval of Class Action Settlement (ECF No. 35).

## III.    KEY TERMS OF THE SETTLEMENT

### A.    The Settlement Class

The Parties agree to certify a nationwide Settlement Class for settlement purposes, defined as follows:

> all persons in the United States who, between November 1, 2018 and the Preliminary Approval Date, purchased in the United States, for household use and not for resale or distribution, one or more of the Class Products, as defined below.

§ 2.6.

### B.    Relief for Settlement Class Members

The Settlement Agreement provides that Defendant will establish a Settlement Fund in the amount of $5.65 million, which will be exhausted to pay all Approved Claims, as well as any Attorneys' Fee Award and Costs, Service Awards, and Notice and Other Administrative Costs that are approved by the Court. §3.1. Class Members who submit an Approved Claim that is not accompanied by Proof of Purchase shall receive $3.57 USD per Class Product purchased during the Class Period, which reflects the average retail price of the Class Products or up to two (2) Class Products claimed per household, with Clorox to provide the average retail prices of the Class

---

[8]    The Settlement Agreement is filed at ECF No. 33-1.

Products to the Class Administrator. §5.2. Class Members who submit an Approved Claim that is accompanied by Proof of Purchase of a Class Product shall be entitled to receive a full refund of the amount of money he or she spent on the Class Products that is documented by Proof of Purchase. §5.3. Each Settlement Class Member's payment shall be increased or decreased on a *pro rata* basis such that the total amount paid to all Settlement Class Members equals the Available Settlement Funds. § 5.6. In the event any checks issued to pay Approved Claims are uncashed or not redeemed for 180 days, such funds shall be donated to Equal Justice Works. § 5.8. All of this ensures that *no settlement funds* will revert to Defendant.

### C.    The Release

The Settlement Agreement provides that upon the Effective Date, Settlement Class Members shall forever release Defendant from any and all claims arising out of or related to the Litigation, including claims related to the presence of *Pseudomonas aeruginosa* or any other bacteria or contaminant in the Class Products that were, or could have been, asserted in this Litigation and any claims arising from alleged omissions or misrepresentations concerning the presence of *Pseudomonas aeruginosa* in the Class Products, other than claims for alleged physical or bodily injuries arising from any Class Member's use of or exposure to the Class Products. § 8.1.

### D.    Notice and Other Administration Expenses

The Settlement Fund will be used to pay the cost of Notice and Other Administrative Expenses, which includes sending the Notice set forth in the Settlement Agreement, the publication of Class Notice, establishment of the Settlement Website, CAFA Notice, the processing, handling, reviewing, and paying of claims made by Claimants, and paying taxes and tax expenses related to the Settlement Fund (including all federal, state, or local taxes of any kind and interest or penalties

7

thereon, as well as expenses incurred in connection with determining the amount of and paying any taxes owed and expenses related to any tax attorneys and accountants), with all such costs and expenses to be paid from the Settlement Fund. § 2.22.

      **E.**    **Incentive Award, Attorneys' Fees, Costs, and Expenses**

As required by the Settlement Agreement, before the Final Approval hearing and in accordance with the Court's regular notice requirements, Plaintiffs' Counsel may apply to the Court for an award of their Attorneys' Fees and Costs. § 4.1. In addition, prior to the Final Approval hearing and in accordance with the Court's regular motion requirements, the Class Representatives may apply to the Court for a Service Award payable from the Settlement Fund of up to $1,000 each as compensation for (a) the time and effort undertaken in, and risks of pursuing, this Litigation. *Id.* Defendant will have an opportunity to object to the application should it so desire.

**IV.**    **CLASS CERTIFICATION FOR SETTLEMENT PURPOSES IS APPROPRIATE**

The Court's Preliminary Approval Order provisionally certified the class for settlement purposes. (ECF No. 35 § 3). Under Fed. R. Civ. P. 23, a class action may be maintained if all the prongs of Rule 23(a) are met, as well as one prong of Rule 23(b). Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). Rule 23(b)(3) requires the Court to find that:

> Questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

8

Fed. R. Civ. P. 23(b)(3). In the Second Circuit, "Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility" in evaluating class certification. *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997) (internal citation omitted).

The Court should now grant final certification because the Settlement Class meets the requirements of Rule 23(a) and Rule 23(b)(3). Indeed, in granting preliminary approval, this Court already determined that class certification for settlement purposes is warranted. *See* ECF No. 36 at § 3.

### A.    Numerosity

Under Rule 23(a)(1), plaintiffs must show that the proposed class is "so numerous that joinder of all [its] members is impracticable." Fed. R. Civ. P. 23(a)(1). The Second Circuit has found numerosity met where a proposed class is "obviously numerous." *Marisol*, 126 F.3d 372, 376 (2d Cir. 1997). Here, there is no dispute that hundreds of thousands of people nationwide purchased the Class Products during the Class Period (November 1, 2018 to the Preliminary Approval Date, November 15, 2023). Numerosity is easily satisfied, and joining so many Class Members is impractical.

### B.    Commonality

Rule 23(a)(2) requires that a plaintiff establish that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This threshold is satisfied if the question is "capable of class wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "[A] single [common] question will" satisfy the commonality inquiry. *Id*. at 359. "The claims for relief need not be identical for them to be common." *Zivkovic v. Laura Christy LLC*, 329 F.R.D. 61, 69 (S.D.N.Y. 2018).

Here, common issues of law and fact exist that affect the Class uniformly and satisfy the commonality requirement, including: whether Defendant's failure to disclose the presence, or the risk, of *Pseudomonas aeruginosa* or any other bacteria in the Class Products was likely to deceive reasonable consumers. Resolving this common question alone would require evaluating the question's merits under a single objective standard, i.e., the "reasonable consumer" test. *Hart v. BHH, LLC*, 2017 WL 2912519, at *6 (S.D.N.Y. July 7, 2017) (commonality met where "the putative class members relied on the same alleged misrepresentations of fact regarding the efficacy of the pest repeller and suffered the same economic harm."). Thus, commonality is satisfied.

### C.    Typicality

The next requirement – typicality – requires that a class representative have claims that are typical of those of the putative class members. Fed. R. Civ. P. 23(a)(2). Plaintiffs must show that "the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented."  *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993). "[D]ifferences in the degree of harm suffered, or even in the ability to prove damages, do not vitiate the typicality of a representative's claims."  *In re Nissan Radiator/Transmission Cooler Litig.*, 2013 WL 4080946, at *19 (S.D.N.Y. May 30, 2013) (Briccetti, J.).  Here, typicality is met because the same allegedly unlawful conduct by Defendant was directed at, or affected, Plaintiffs and Settlement Class Members.  *Robidoux*, 987 F.2d at 936-37.

### D.    Adequacy

The final Rule 23(a) prerequisite requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Rule 23(a)(4) permits certification of a class only if "the representative parties will fairly and adequately protect the interests of the class," which requires: (1) the class representatives do not have conflicting interests

with other class members; and (2) class counsel is "qualified, experienced and generally able to conduct the litigation." *Marisol*, 126 F.3d 372, 378 (2d Cir. 1997).

Plaintiffs and their counsel are adequate. To satisfy the first requirement, plaintiffs must show that "the members of the class possess the same interests" and that "no fundamental conflicts exist" between the class representatives and class members. *Charron v. Wiener*, 731 F.3d 241, 249 (2d Cir. 2013). Here, Plaintiffs do not have any conflicts of interest with the absent members of the proposed Settlement Class, as their claims are coextensive with those of the proposed Settlement Class. *General Tel. Co. v. Falcon*, 457 U.S. 147, 157-58, fn. 13 (1982). Plaintiffs possess the same interests as members of the proposed Settlement Class because they have incurred the same alleged injuries, which occurred in the same manner and based on the same allegedly misleading conduct concerning the Class Products.

Likewise, Class Counsel has extensive experience in litigating class actions of similar size, scope, and complexity to this action. Sultzer Decl. ¶ 64, ECF Nos. 33-3 through 33-7. Class Counsel regularly engages in major complex class action litigation, has the resources necessary to conduct litigation of this nature, and has frequently been appointed lead class counsel by courts throughout the country, including actions in this court before Judges Roman, Karas, and Briccetti.[9] Plaintiffs' Counsel has substantial experience prosecuting actions that involve deceptive labeling of consumer products. *Id*.[10]

---

[9] See *Catalano v. Lyons Magnus, LLC*, Case No. 7:22-cv-06867 (S.D.N.Y.) (Karas, J.); *Patora v. Tarte, Inc.*, Case No. 18-cv-11760-KMK (S.D.N.Y.) (Karas, J); *Rapoport-Hecht v. Seventh Generation*, Case No. 7:14-cv-09087 (S.D.N.Y.) (Karas, J.); *Mayhew, v. KAS Direct LLC*, Case No. 16-cv-6981 (Briccetti, J); *Swetz v. GSK Consumer Health, Inc.*, 7:20-cv-04731-NSR (S.D.N.Y) (Roman, J); *Patora v. Colgate-Palmolive Co.*, Case No. 7:23-cv-01118-VB (S.D.N.Y.) (Briccetti, J.).

[10]     The Court should also appoint Class Counsel (as defined in the Settlement Agreement) as class counsel under Rule 23(g). When appointing class counsel, the Court "must consider (i) the work counsel of has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of the claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Here, Class Counsel have diligently prosecuted this case from inception, including investigating and mediating the claims, Sultzer Decl., ¶¶ 9-34.  Moreover, Class

Accordingly, because Plaintiffs and Class Counsel have demonstrated their commitment to representing the Settlement Class and neither have interests antagonistic to the Settlement Class, the adequacy requirement is satisfied.

### E.    The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3)

Rule 23(b)(3) requires that common questions of law or fact not only be present, but "predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). That Plaintiffs easily meet the Rule 23(a) criteria is a strong indicator that Rule 23(b)(3) is satisfied. *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986) (satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality").

#### 1.    Common Questions Predominate

Where plaintiffs are "unified by a common legal theory" and by common facts, the predominance requirement is satisfied. *McBean v. City of New York*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005).  In this case, Defendant engaged in a common course of conduct. The central common questions include whether Defendant's failure to disclose the potential presence of *Pseudomonas aeruginosa* or *Pseudomonas fluorescens* in the Class Products was likely to deceive reasonable consumers and whether the omissions were material.  These issues are subject to "generalized proof" and "outweigh those issues that are subject to individualized proof."  *In re Nassau Cty. Strip Search Cases*, 461 F.3d at 227–28. These central common questions

---

Counsel has significant experience in class actions and complex litigation, as well as extensive knowledge of the applicable law. *See* Class Counsel Firm Resumes, ECF No. 33, Exs. 3-7. Class Counsel's experience and work in this case meet the requirements of Fed. R. Civ. P. 23(g), and the Court should not hesitate to appoint Class Counsel under Rule 23(g).

predominate over any questions that may affect individual Class Members, are subject to "generalized proof," and "outweigh those issues that are subject to individualized proof." *Augustin v. Jablonsky* (In re Nassau County Strip Search Cases), 461 F.3d 219, 227-28 (2d Cir. 2006). In these circumstances, courts find, particularly for purposes of settlement, that common questions predominate over individual issues. *See In re Prudential Insur. Sales Practices Litig.*, 962 F. Supp. 450, 511-512 n.45 (D.N.J. 1997) (citing numerous cases).

### 2. A Class Action Is A Superior Mechanism For Adjudication

The second part of the Rule 23(b)(3) analysis is a relative comparison examining whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy." *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968). Rule 23(b)(3) sets forth a non-exclusive list of relevant factors, including whether individual class members wish to bring, or have already brought, individual actions; and the desirability of concentrating the litigation of the claims in the particular forum. Fed. R. Civ. P. 23(b)(3).[11]

Plaintiffs satisfy Rule 23(b)(3)'s superiority requirement because common questions comprise a substantial aspect of the case and can be resolved for all Class Members in a single adjudication, obviating the need for multiple trials in multiple venues. Importantly, "[t]he potential class members are both significant in number and geographically dispersed" and "[t]he interest of the class as a whole in litigating the many common questions substantially outweighs any interest by individual members in bringing and prosecuting separate actions." *Meredith Corp. v. SESAC,*

---

[11]    Another factor, whether the case would be manageable as a class action at trial, is not of consequence in the context of a proposed settlement. *See Amchem*, 521 U.S. at 620 ("[c]onfronted with a request for settlement-only class certification, a [trial] court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial"); *Frank*, 228 F.R.D. at 183 ("The court need not consider the [manageability] factor, however, when the class is being certified solely for the purpose of settlement."). Moreover, "failure to certify an action under Rule 23(b)(3) on the sole ground that it would be unmanageable is disfavored and should be the exception rather than the rule." *In re Petrobas Sec.*, 862 F.3d 250, 268 (2d Cir. 2017) (quoting *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 140 (2d Cir. 2001)).

*LLC*, 87 F. Supp. 3d 650, 661 (S.D.N.Y. 2015). The "small recoveries" at stake here likely "do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Tart*, 2015 WL 5945846, at *5. In addition, a class action will conserve judicial resources because "rather than individually settling [thousands of] lawsuits, the proposed Settlement allows for the named Plaintiffs, class members, and Defendants to resolve all claims … at once." *Id*. Moreover, it is desirable to concentrate the claims in this Court, as the Court is already familiar with the factual and legal issues in the case. A class action is the most suitable mechanism to fairly, adequately, and efficiently resolve the Settlement Class's claims.

## V.    THE NOTICE PLAN COMPORTS WITH DUE PROCESS

Before final approval can be granted, due process and Rule 23 require that the notice provided to the Settlement Class is "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). "Such notice to class members need only be reasonably calculated under the circumstances to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections*." In re Marsh & McLennan Cos., Inc. Sec. Litig*., 2009 WL 5178546, at *12 (S.D.N.Y. Dec. 23, 2009). Notice must clearly state essential information regarding the settlement, including the nature of the action, terms of the settlement, and class members' options. See Fed. R. Civ. P. 23(c)(2)(B). At its core, all that notice must do is "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114 (2d Cir. 2005) ("Visa U.S.A.") (citation omitted).

"It is clear that for due process to be satisfied, not every class member need receive actual notice, as long as counsel 'acted reasonably in selecting means likely to inform persons affected.'" *In re Adelphia Commc'ns Corp. Sec. & Derivative Litigs.*, 271 F. App'x 41, 44 (2d Cir. 2008) (quoting *Weigner v. City of N.Y.*, 852 F.2d 646, 649 (2d Cir. 1988)). The Federal Judicial Center notes that a notice plan is reasonable if it reaches at least 70% of the class. See Fed. Judicial Ctr., Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide 3 (2010). The notice plan here easily meets these standards, as it reached approximately 76.85% of the Settlement Class. *See* Weisbrot Decl. ¶ 26.

At preliminary approval, the Court approved the Parties' proposed Claim Form, Notices, and Notice Plan, finding they met the requirements of Rule 23 and due process. See ECF No. 35 at §§ 9-11. The Plan has now been fully carried out by professional settlement administrator Angeion. Pursuant to the Settlement, Defendant provided Angeion with a list of available names, addresses and emails of potential Settlement Class Members. *See* Weisbrot Decl. ¶ 8. Angeion successfully delivered the Court-approved notice via email to Class Members. See *id*. ¶ 9. In addition, Angeion implemented a comprehensive media notice program consisting of internet banner advertisement notice, social media notice via Facebook and Instagram, and a paid search campaign via Google. *See id*. ¶¶ 10-12. These summary notices also directed Class Members to the Settlement Website, where they were able to submit an election form online to receive payment electronically; access important court filings; and see deadlines and answers to frequently asked questions.  The Settlement Administrator also maintained a toll-free telephone line to provide information and answer questions. *See id*. ¶¶ 13-17. The success of the Notice Plan is clear, given that 287,790 Class Members submitted Approved Claims in this matter. *See id*. ¶ 18.[12]

---

[12]        On August, 7 2023, Angeion also notified the appropriate state and federal officials pursuant to CAFA. *See* Weisbrot Decl. ¶ 5 No objection has been received from any state or federal official.

Given the broad reach of the notice, and the comprehensive information provided, the requirements of due process and Rule 23 are easily met.

## VI.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE FINALLY APPROVED BY THE COURT

There is a "strong judicial policy in favor of settlements, particularly in the class action context." *Visa U.S.A.*, 396 F.3d at 116 (internal quotations omitted); *see also* NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy."). In evaluating a class action settlement, courts in the Second Circuit consider the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) ("*Grinnell*"). The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendant to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Grinnell*, 495 F.2d at 463.

Courts must also consider the "four enumerated factors in the new [Federal Rule of Civil Procedure] Rule 23(e)(2), in addition to the nine *Grinnell* factors." *Johnson v. Rausch, Sturm, Israel, Enerson & Hornik, LLP*, 333 F.R.D. 314, 420 (S.D.N.Y. 2019). The Rule 23(e) factors are whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any

16

agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2). "There is significant overlap between the Rule 23(e)(2) and Grinnell factors, which complement, rather than displace each other." *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 2019 WL 6875472, at *14 (E.D.N.Y. Dec. 16, 2019) ("*In re Payment Card II*").

### A.    The *Grinnell* Factors

#### 1.    Litigation Through Trial Would be Complex, Costly, And Long

By reaching a favorable settlement prior to trial, Plaintiffs seek to avoid significant expense and delay, and instead ensure recovery for the class. "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001). Courts have consistently held that, unless the proposed settlement is clearly inadequate, its acceptance and approval are preferable to the continuation of lengthy and expensive litigation with uncertain results. *TBK Partners, Ltd. v. Western Union Corp.*, 517 F. Supp. 380, 389 (S.D.N.Y. 1981), aff'd, 675 F.2d 456 (2d Cir. 1982); *In re Nissan Radiator*, 2013 WL 4080946, at *4 ("Balancing the rewards available to Class Members now with the projected expense and delay of continued litigation, this factor weighs in favor of approval.").

This case is no exception. As discussed herein, the Parties have engaged in significant settlement-related discovery. Sultzer Decl. ¶¶ 18-19. The next steps in the litigation would have been resolution by the Court of Defendant's inevitable Motions to Dismiss, Plaintiffs' forthcoming motion for class certification, and Defendant's forthcoming motion for summary judgment. At minimum, these efforts would be costly and time-consuming for the Parties and the Court and

create the risk that a litigation class would not be certified or that the Settlement Class would recover nothing at all. Defendant is represented by formidable defense counsel well-versed in class action litigation, and Defendant indicated during settlement negotiations that it would continue to assert numerous defenses on the merits. Plaintiffs and Class Counsel are also aware that Defendant would oppose class certification vigorously, and that Defendant would prepare a competent defense at trial.  And while Plaintiffs and Class Counsel were confident in the claims alleged, it is entirely possible that the Court could have sided with Defendant, leaving Plaintiffs and Class Members empty-handed.

The Settlement, on the other hand, permits a prompt resolution of this action on terms that are fair, reasonable, and adequate to the Class. This result will be accomplished years earlier than if the case proceeded to judgment through trial and/or appeals, and provides certainty, whereas litigation does not and could result in defeat for the Class on summary judgment, at trial or on appeal. Consequently, this *Grinnell* factor favors final approval of the Settlement.

2.    *The Reaction of The Class Is Overwhelmingly Positive*

"It is well settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 333 (E.D.N.Y. 2010) (internal quotations omitted).

Here, the reaction of the Class Members to the Settlement has been overwhelmingly positive. Class Notice has been provided to the Settlement Class Members in accordance with the requirements of Rule 23(c)(2)(B) and the Preliminary Approval Order (ECF No. 26). *See generally* Weisbrot Decl.    Zero Class Members objected to the Settlement, and only twenty-one (21) requested exclusion.  *Id*. ¶ 24. This reaction and lack of objections from the Settlement Class leave no question that the Settlement Class view the Settlement favorably, which weighs heavily favors

final approval and further supports the "presumption of fairness." *See, e.g., Massiah v. MetroPlus Health Plan, Inc.*, 2012 WL 5874655, at *4 (E.D.N.Y. 2012) ("The fact that the vast majority of class members neither objected nor opted out is a strong indication of fairness.").

           3.      *The Stage of The Proceedings and The Amount of Discovery Completed*

The third *Grinnell* factor considers "whether Class Plaintiffs had sufficient information on the merits of the case to enter into a settlement agreement . . . and whether the Court has sufficient information to evaluate such a settlement." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 986 F. Supp. 2d 207, 224 (E.D.N.Y. 2013). As set forth above, Class Counsel have conducted significant informal discovery related to Plaintiffs' claims, including extensive sales, distribution and marketing information regarding the Class Products, and the technical scientific information pertaining to the manufacturing process and suppliers regarding the sources and reasons for the *Pseudomonas aeruginosa* contamination, as well as the protocols put in place by Defendant to ensure that such a contamination does not reoccur. Sultzer Decl. ¶¶ 17, 18. This is largely the information that Class Counsel would have reviewed had the matter proceeded to formal discovery. *Id*. In addition, Class Counsel conducted their own testing of the Class Products. *Id*. Thus, Plaintiffs had sufficient information to evaluate the claims of the class. *See In re Nissan Radiator*, 2013 WL 4080946, at *7 ("Although the parties have not engaged in extensive discovery, as previously noted, the plaintiffs conducted an investigation prior to commencing the action, retained experts, and engaged in confirmatory discovery in support of the proposed settlement."); *D.S. v. New York City Dep't of Educ.*, 255 F.R.D. 59, 77 (E.D.N.Y. 2008) ("The amount of discovery undertaken has provided plaintiffs' counsel 'sufficient information to act intelligently on behalf of the class in reaching a settlement.").

Courts in this district routinely approve settlements of class actions at the early stages of

class actions because it allows the class members to recover without the delay that such complex cases usually entail, especially where, as here, the settlements were brought about by the skill and diligence of Class Counsel in evaluating the claims and damages on the litigation. *See Asare v. Change Group N.Y., Inc.*, 2013 U.S. Dist. LEXIS 165935, *55 (S.D.N.Y Nov. 15, 2013) (granting final approval of class action settlement where "Class Counsel's skill and experience was directly responsible for this favorable settlement reached in an efficient manner without great Court intervention at an early stage of litigation."); *Hernandez v. Merrill Lynch & Co.,* 2013 U.S. Dist. LEXIS 42681, *14 (S.D.N.Y. Mar. 21, 2013) ("courts encourage early settlement of class actions, when warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere."); *Castagna v. Madison Square Garden, L.P.,* U.S. Dist. LEXIS 64218, 2011 WL 2208614, at *6 (S.D.N.Y. Jun. 7, 2011). In fact, a number of similar consumer class actions cases in this Court were settled and granted final approval at similar procedural stages. *See Catalano v. Lyons Magnus, LLC,* Case No. 7:22-cv-06867 (S.D.N.Y.) (Karas, J.); *Patora v. Tarte, Inc*., Case No. 18-cv-11760-KMK (S.D.N.Y.) (Karas, J); *Rapoport-Hecht v. Seventh Generation*, Case No. 7:14-cv-09087 (S.D.N.Y.) (Karas, J.); *Mayhew, v. KAS Direct LLC*, Case No. 16-cv-6981 (Briccetti, J); *Swetz v. GSK Consumer Health*, Inc., 7:20-cv-04731-NSR (S.D.N.Y) (Roman, J); *Patora v. Colgate-Palmolive Co*., Case No. 7:23-cv-01118-VB (S.D.N.Y.) (Briccetti, J.); *Bangoura v. Beiersdorf, Inc. and Bayer Healthcare, LLC*, Case No. 1:22-cv-00291-BMC (E.D.N.Y. Jan. 5, 2023) (Cogan, J.).[13]

---

[13] Tr. of Final Approval Hearing, at 9:11-20 ("I think there is definitely a premium to be taken for the fact that the case was settled at an early stage. It is very often the case in these kinds of consumer fraud cases, whether it's marketing or potential personal injury or lack of value, that the case can drag on, you know, despite my best efforts I've had them drag on for four or five years. And the fact that I'm looking at 2022 index number on this case is, in itself, a testament to the efficiency of plaintiffs' counsel's efforts.").

4.      *The Risks of Establishing Liability and Damages*

The fourth and fifth *Grinnell* factors relate to continued litigation risks, i.e., the risks of establishing liability and damages. *See In re Vitamin C*, 2012 WL 5289514, at *5. "Litigation inherently involves risks." *Willix v. Healthfirst, Inc.*, 2011 WL 7584862, at *4 (E.D.N.Y. Feb. 18, 2011) (quoting *In re PaineWebber*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997)). "One purpose of a settlement is to avoid the uncertainty of a trial on the merits." *Id*. In weighing the risks of certifying a class and establishing liability and damages, the court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 177 (internal quotations omitted).

Plaintiffs recognize that, as with any litigation, uncertainties exist. Defendant continues to deny Plaintiffs' allegations, and should this matter proceed, Plaintiffs expect Defendant will vigorously defend itself on the merits, at each stage of litigation and likely on appeal. Most fundamentally, although Plaintiffs believe a reasonable consumer would be misled by the failure to disclose that the Class Products could potentially contain *Pseudomonas aeruginosa*, a jury might not agree. In addition, Plaintiffs anticipate a zealous "battle of the experts" with respect to extent of *Pseudomonas aeruginosa* contamination, the amount of bacteria in each contaminated bottle, the health effects of exposure to *Pseudomonas aeruginosa* bacteria, and calculating damages. Thus, "while Plaintiffs and Class Counsel believe that they would prevail on their claims asserted against [Defendants], they also recognize the risks and uncertainties inherent in pursuing the action through [the pleadings,] class certification, summary judgment, trial, and appeal." *Lowe*, 2022 WL 4621433, at *8. The proposed Settlement alleviates these risks and provides a substantial benefit to the Settlement Class Members in a timely fashion. Accordingly, these *Grinnell* factors are met.

### 5. *The Risk of Maintaining Class Action Status Through Trial*

The Litigation settled before rulings on class certification, and the current certification is for settlement purposes only. ECF 35 ¶ 3. As discussed above, in addition to the challenges inherent in certifying a potential national class, Plaintiffs must proffer a suitable mechanism for calculating damages in the form of a class-wide price premium. While Plaintiffs believe they could establish the existence of such a premium to the Court's satisfaction, as a number of Courts in this Circuit have accepted that methodology, *see Shaya Eidelman v. Sun Prods. Corp.*, 2022 U.S. App. LEXIS 15480, *1 (2d Cir. 2022) ("One method of demonstrating actual injury in the consumable goods context is by showing that the plaintiff paid a price premium"), the proposed Settlement eliminates the unavoidable risk that Plaintiffs cannot establish the premium. Further, "[e]ven assuming that the Court granted certification, there is always the risk of decertification after the close of discovery." *Lowe*, 2022 WL 4621433, at *8 (N.D.N.Y. Sept. 30, 2022). Given the risks, this factor favors final approval.

### 6. *The Ability of Defendant To Withstand Greater Judgment*

"Courts have recognized that a [defendant's] ability to pay is much less important than the other *Grinnell* factors, especially where the other factors weigh in favor of approving the settlement." *In re Sinus Buster Prods. Consumer Litig.*, 2014 WL 5819921, at *11 (E.D.N.Y. Nov. 10, 2014). Thus, Defendant's "ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Viafara v. MCIZ Corp.*, 2014 WL 1777438, at *7 (S.D.N.Y. Apr. 30, 2014). Therefore, at worst, this factor is neutral.

### 7. *The Range of Reasonableness of The Settlement in Light of The Best Possible Recovery And in Light of All The Attendant Risks of Litigation*

Determining whether a settlement amount is reasonable "does not involve the use of a mathematical equation yielding a particularized sum." *Frank*, 228 F.R.D. at 186. "Instead, there is

a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id*. (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). Because a settlement provides certain and immediate recovery, courts often approve settlements even where the benefits obtained because of the settlement are less than those originally sought. As the Second Circuit stated in *Grinnell*, "[t]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth of a single percent of the potential recovery." *Grinnell*, 495 F.2d at 455 n.2. Further, in the Second Circuit, courts are required to calculate the value of a Settlement in terms of the amount of relief made available to Class Members, as opposed to the amount that may actually be claimed. *Cf. Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007) (basing award of attorneys' fees on "the total funds made available, whether claimed or not" because "[t]he entire Fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class.").

Here, the relief for which the Settlement Agreement provides is within the range of reasonableness, especially considering the best possible recovery and all the attendant risks of litigation.[14] The gravamen of the Litigation is that Defendant deceived consumers by failing to disclose that the Class Products may contain *Pseudomonas aeruginosa*. The cash compensation to which eligible Settlement Class Members will be entitled is significant relative to Plaintiffs' best day at trial. As set forth at length in Plaintiffs' memorandum of law in support of their motion

---

[14] *See* comprehensive study of class action settlements and medium recoveries: https://www.nera.com/publications/archive/2023/recent-trends-in-securities-class--actionlitigation--2022-full-.html, at 19 (finding that the median securities fraud class action between 2013 and 2022 settled for between 1.5% and 2.5% of the most common measure of investor losses, depending on the year)

for attorneys' fees (ECF No. 37)[15], the $5.65 million settlement represents between approximately 13.6% (price premium theory of damages) and 22.6% (total disgorgement theory of damages) of Plaintiffs' potential recovery.  Thus, the cash compensation to which eligible Settlement Class Members will be entitled is significant relative to Plaintiffs' best day at trial. The substantial relief afforded strongly supports final approval.

### B.    The Rule 23(e)(2) Factors

#### 1.    Class Counsel and Plaintiffs Adequately Represented The Class

As set forth in Argument § IV.D. *supra*, "plaintiffs' interests are aligned with other class members' interests because they suffered the same injuries." *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 692 (S.D.N.Y. 2019).  "Because of these injuries, plaintiffs have an interest in vigorously pursuing the claims of the class." *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d at 692 (internal quotations omitted).  Further, courts have previously found that Plaintiffs' attorneys adequately meet the obligations and responsibilities of Class Counsel. *See* Class Counsel Firm Resumes, ECF No.33, Exs. 3-7.

#### 2.    The Settlement Was Negotiated at Arm's Length

While Courts can no longer presumed that the proposed settlement was fair, reasonable, and adequate *solely* because it was reached through an arm's-length negotiation, "the arms-length quality of the negotiations remain a factor in favor of approving the settlement." *Moses v. N.Y. Times Co.,* 79 F.4th 235, 243 (2d Cir. 2023).  Here, both Class Counsel and counsel for Defendant are experienced in class action litigation. Sultzer Decl. ¶¶ 48, 64. Moreover, the parties participated in arms-length settlement negotiations and mediation before Judge Gold and engaged in protracted

---

[15] Class Counsel has supplemented the information related to their billing and hours as they have continued to spend time and resources overseeing the Settlement administration, assisting Class Members, and tending to any other issues that have arisen related to the Settlement since the filing of Plaintiff's Memorandum of Law in Support of its Motion for Attorneys' Fees, Litigation Costs, and Service Awards.  *See* Sultzer Decl. ¶ 66.

settlement discussions after the mediation.  *Id*. ¶¶ 33-34. *See Reyes v. Summit Health Mgmt.*, LLC, 2024 U.S. Dist. LEXIS 21061, *8 (S.D.N.Y. Feb. 25, 2024) ("The Parties were represented by experienced counsel who were then aided in their negotiations by an experienced mediator.  This culminated in an agreement in principle after a day-long mediation followed by further negotiations to draft the Settlement Agreement. All of this suggests that the Settlement is the result of good faith arm's-length negotiations.").

3.    *The Settlement Provides Adequate Relief to The Class*

Whether relief is adequate considers "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Rule 23(e)(2)(C)(i-iv).

As to "the costs, risks, and delay of trial and appeal," this factor "subsumes several *Grinnell* factors … including: (i) the complexity, expense and likely duration of the litigation; (ii) the risks of establishing liability; (iii) the risks of establishing damages; and (iv) the risks of maintaining the class through the trial." *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 330 F.R.D. at 36. The Settlement meets each of these *Grinnell* factors. *See* Argument § VI.A.

As to "the effectiveness of any proposed method of distributing relief to the class," Settlement Class Members need only submit a simple claim form to receive significant monetary relief. This is a reasonable method of distributing relief to Settlement Class Members. *See Ferrick v. Spotify USA Inc.*, 2018 WL 2324076, at *8 (S.D.N.Y. May 22, 2018).

As to "the terms of any proposed award of attorneys' fees," in the Second Circuit, an award of attorneys' fees is based on "the total funds made available, whether claimed or not" because "[t]he entire Fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class." *Masters*, 473 F.3d at 437. "Courts evaluating the fairness, reasonableness, and adequacy of a proposed settlement must consider the four factors outlined in Rule 23(e)(2) holistically, taking into account - among other substantive considerations stated in the rule - the proposed attorneys' fees and incentive awards." *Moses v. N.Y. Times Co.*, 79 F.4th 235, 243 (2d Cir. 2023). Here, Class Counsel has petitioned the Court for $1,883,145 in fees. This is one-third of the $5.65 million in monetary relief that Class Counsel has made available, which is reasonable in this Circuit.[16]  Moreover, $ 3,002,990.09 has been made available to Class Members who submit Approved Claims. *See* Weisbrot Decl. ¶ 21. Taking into account the reasonable requested attorneys' fees, the available settlement funds provide a significant cash recovery for Class Members, supporting final approval.

Finally, as to "any agreement required to be identified by Rule 23(e)(3)" or "any agreement made in connection with the proposal," *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3pd at 696, no such agreement exists in this case, other than the Settlement.

### 4.      The Settlement Treats All Class Members Equally

This Rule 23(e)(2) factor discusses "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." *In re Payment Card I*, 330 F.R.D. at 47. Here, the Settlement distributes relief on a *pro rata* basis,

---

[16]      *See Trinidad v. Pret a Manger (UDS) Ltd.*, 2014 WL 4670870, at *11 (S.D.N.Y. Sept. 19, 2014) ("[A]warding fees of 33% is common in this district."); *Hernandez v. Uzzal Pizzeria, Inc.*, 2022 WL 1032522, at *1 (S.D.N.Y. Apr. 6, 2022) (same).

which has been found by courts in this Circuit to be equitable. *Id*.; *see also Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 667 (S.D.N.Y. 2015) (a *pro rata* distribution plan "appears to treat the class members equitably").[17]

## VII.    CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their Motion for Final Approval of the Settlement and enter the Final Approval Order in the form submitted herewith.

Dated: May 1, 2024                              Respectfully submitted,

                                                By: /s/ Jason P. Sultzer
                                                Jason P. Sultzer
                                                **THE SULTZER LAW GROUP P.C.**
                                                Jason P. Sultzer, Esq.
                                                Jeremy Francis, Esq.
                                                85 Civic Center Plaza, Suite 200
                                                Poughkeepsie, NY 12061
                                                Tel: (845) 483-7100
                                                Fax: (888) 749-7747
                                                Email: sultzerj@thesultzerlawgroup.com
                                                Email: francisj@thesultzerlawgroup.com

                                                **LEVIN SEDRAN & BERMAN, LLP**
                                                Charles E. Schaffer, Esq.
                                                510 Walnut Street, Suite 500
                                                Philadelphia, PA 19106
                                                Tel: 215-592-1500
                                                Email: cschaffer@lfsblaw.com

---

[17]    Although Class Members with Proof of Purchase will receive more per unit than those without Proof of Purchase, that does not mean Class Members are treated inequitably. *Patellos v. Hello Products, LLC*, 2022 WL 2159566, at *1 (S.D.N.Y. June 15, 2022) (finding "the Settlement Agreement treats the Settlement Class Members equitably relative to one another" where class members with proof of purchase could make claims for up to ten products, versus up to five products without proof of purchase); *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 2020 WL 7389330, at *3 (S.D.N.Y. Dec. 16, 2020). Further, all Class Members' claims are subject to upward or downward *pro rata* adjustment. A *pro rata* distribution has been found by courts in this Circuit to be equitable. *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 667 (S.D.N.Y. 2015) (finding that a pro rata distribution plan "appears to treat the class members equitably … and has the benefit of simplicity"); *Gordon v. Vanda Pharmaceuticals Inc.*, 2022 WL 4296092, at *5 (E.D.N.Y. Sept. 15, 2022).

**LEEDS BROWN LAW, P.C.**
Jeffrey K. Brown, Esq.
1 Old Country Rd., Suite 347
Carle Place, NY 11514
Tel: (516) 873-9550
Email : jbrown@leedsbrownlaw.com


**SQUITIERI & FEARON, LLP**
Stephen J. Fearon, Jr.
Paul Sweeny
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 421-6492
Facsimile: (212) 421-6553
Email: Stephen@sfclasslaw.com
Email: Paul@sfclasslaw.com

*Attorneys for Plaintiffs and the*
*Settlement Class*

28